**Allan Frank DAVIS, Petitioner,**

v.

**Jerry CAMPBELL, Superintendent, Cummins Unit, Arkansas Department of Correction, Respondent.**

**No. PB–C–77–19.**

United States District Court,
E. D. Arkansas,
Pine Bluff Division.

Jan. 29, 1979.

Charles S. Gibson, Dermott, Ark., Raymond R. Roberts, Little Rock, Ark., for petitioner.

Joe Purvis, Asst. Atty. Gen., Little Rock, Ark., for respondent.

## MEMORANDUM OPINION

ROY, District Judge.

The petitioner, Allan Frank Davis, is currently confined at the Cummins Unit of the Arkansas Department of Correction pursuant to the judgment and sentence of the Circuit Court of Garland County, Arkansas. On June 14, 1968, following a jury trial, the petitioner was convicted of first degree murder in the January 19, 1967 shooting death of his estranged wife, Sharon Davis. The petitioner subsequently appealed his conviction to the Arkansas Supreme Court alleging several errors in the trial as grounds for reversal. The petitioner's conviction was affirmed by the Arkansas Supreme Court in the reported decision of *Davis v. State, 246 Ark. 838, 440 S.W.2d 244 (1969).* While the jury recommended imposition of a sentence of death by electrocution, the petitioner's initial sentence was ultimately commuted to a term of life imprisonment. Consequently, the petitioner has been in continual state custody from the date of his state court conviction until the present. In this proceeding, which is based upon the provisions of 28 U.S.C. Sec. 2254, the petitioner seeks the issuance of a writ of habeas corpus as a result of claimed constitutional deficiencies in his state court trial. On June 15, 1978 this Court conducted an evidentiary hearing in order to allow the petitioner an opportunity to present any and all evidence relevant to the contentions raised in his application for federal habeas relief. Since the testimony and exhibits presented on behalf of the petitioner dealt exclusively with the issue of whether the petitioner should be admitted to bail pending disposition of this cause, the Court's review of the relevant evidence will necessarily be limited to an assessment of the facts disclosed by the transcript of petitioner's state court trial.

The petitioner has raised three arguments in support of his claim for relief. The petitioner's contentions are as follows and will be addressed by the Court in their numerical sequence:

I. PETITIONER WAS DENIED DUE PROCESS OF LAW BY THE STATE'S FAILURE TO ADVISE HIM OF HIS CONSTITUTIONAL RIGHTS AS PRESCRIBED BY THE *MIRANDA* RULE AND AS SET FORTH IN THE FIFTH, SIXTH AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION.

II. PETITIONER WAS DENIED DUE PROCESS OF LAW BY THE TRIAL COURT'S ALLOWANCE OF THE PETITIONER'S ABSENCE DURING CERTAIN STAGES OF THE TRIAL.

III. PETITIONER WAS DENIED DUE PROCESS OF LAW BY THE TRIAL COURT'S FAILURE TO CONDUCT A PRE–TRIAL COMPETENCY HEARING TO DETERMINE PETITIONER'S MENTAL COMPETENCY TO PROCEED TO TRIAL.

### I.

The petitioner's first contention actually has two separate and distinct parts which have been interwoven. The first part alleges a violation of the petitioner's Fifth Amendment privilege against self incrimination, and the second part asserts an alleged denial of the petitioner's Sixth Amendment right to the effective assistance of counsel. While these arguments are closely related to petitioner's overall claim of a denial of due process, the Court will address each subsidiary claim separately to avoid confusion.

The Fifth Amendment claim is premised upon a pretrial psychiatric examination of the petitioner which was conducted pursuant to a court order obtained by the State. Petitioner argues, and the state court record reflects, that the psychiatric examination was conducted without notice to petitioner's counsel and without the presence of petitioner's counsel. Petitioner further argues that he should have been advised or warned of the rights prescribed by the United States Supreme Court's decision in *Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966),* before answering any questions asked by Dr. Yohe, the State's primary expert psychiatric witness. Petitioner takes his Fifth Amendment claim still further by asserting that the state trial court violated his Fifth Amendment privilege against self incrimination by ordering the state hospital to turn over all medical records concerning petitioner's psychiatric status to the prosecution.

An examination of the petitioner's Fifth Amendment claim reveals the existence of no constitutional violation. As the *Miranda* decision indicates, an accused person must be warned of their rights against self incrimination only within the context of a custodial interrogation. Thus, the scope of *Miranda* is limited to those situations where law enforcement agencies seek to elicit inculpatory statements from an accused or suspected offender who is in custody at the time of questioning. In the present case, petitioner was examined by the State's psychiatrist following the entry of a plea of not guilty by reason of insanity. There is no dispute that petitioner was not given *Miranda* warnings prior to the examination. The only question now remaining is a question of law, whether *Miranda* warnings must be given prior to the prosecution's pretrial psychiatric examination of the accused, or alternatively stated, whether a pretrial psychiatric examination of an accused which is conducted by the State's psychiatrist constitutes "custodial interrogation" within the meaning of *Miranda v. Arizona, supra.*

While there is not an abundance of precedents, those courts which have faced the specific issue now before the court have held that *Miranda* warnings are not required before a state psychiatrist examines a defendant. *United States v. Greene, 497 F.2d 1068, 1081 (7th Cir. 1974); United States v. Bohle, 445 F.2d 54, 66 (7th Cir.*

1971); *United States ex rel. Stukes v. Shovlin,* 329 F.Supp. 911 (E.D.Pa.1971), aff'd 464 F.2d 1211 (3d Cir. 1972). Recognition of the purpose of a psychiatric examination, as opposed to that of custodial interrogation, provides the underlying rationale in each of these decisions. The fact that pretrial psychiatric examinations have a different aim or purpose from that of a custodial interrogation was cogently observed by the court in *United States ex rel. Stukes v. Shovlin, supra,* at p. 914:

> We cannot, however, adopt the view that a psychiatric evaluation is equivalent to custodial interrogation since clearly their purposes are distinct and have different aims. A psychiatric evaluation is not conducted by the police with a view to eliciting inculpatory statements, but rather to objectively ascertain a defendant's legal competency to stand trial.

This Court agrees with the *Shovlin* court's analysis of the Fifth Amendment issue and, accordingly, finds that petitioner suffered no constitutional deprivation from the failure of the State's psychiatrist to advise petitioner of his *Miranda* warnings prior to examination. It should be noted that the petitioner has failed to demonstrate any resulting prejudice even if such warnings were constitutionally mandated. The transcript of petitioner's state trial reflects, and petitioner concedes, that Dr. Yohe, the State's primary expert psychiatric witness, was prohibited from testifying as to the contents of any statement made by petitioner to him during the examination.

■ The second part of petitioner's alleged denial of due process stems from the absence of petitioner's counsel during the examination conducted by the State's psychiatrist. As has been previously observed, petitioner's counsel was never notified that the examination was to take place nor was he present when the examination was actually performed. Petitioner contends that these uncontroverted facts establish a denial of his Sixth Amendment right to the effective assistance of counsel. Although the respondent acknowledges that it would be better to notify defense counsel of an examination of the type performed in this case, respondent denies that petitioner was constitutionally entitled to the presence of his attorney at the examination. The matter in controversy thus resolves itself into whether an accused has the right to have counsel present during a pretrial mental examination, or more narrowly framed, whether a pretrial psychiatric examination constitutes a "critical stage" of the prosecution.

■■ It is now well established that the Sixth Amendment right to the effective assistance of counsel attaches at all "critical stages" of a criminal prosecution. *United States v. Wade,* 388 U.S. 218, 87 S.Ct. 1926, 18 L.Ed.2d 1149 (1967). It is also established that "critical stages of a prosecution" are those stages which take place after judicial proceedings have been initiated against the accused. *Brewer v. Williams,* 430 U.S. 387, 97 S.Ct. 1232, 51 L.Ed.2d 424 (1977). In the present case, petitioner cites the case of *Schantz v. Eyman,* 418 F.2d 11 (9th Cir. 1969) in support of his contention that an accused is entitled to the presence of counsel during a pretrial mental examination. In *Schantz, supra,* the defendant's attorney refused to allow the defendant to be psychiatrically examined by the State prior to trial. The prosecution then petitioned and obtained a court order directing the defendant to submit to examination by the State. On the day of the scheduled examination, the prosecution withdrew its request for the examination and thereafter, without notice to the defendant's counsel, sent a psychiatrist to the defendant's residence to question the defendant. Upon arrival at the defendant's residence, the psychiatrist disclosed his affiliation with the county attorney's office and proceeded to ask the defendant questions. The defendant refused to answer any questions and the State's psychiatrist left. The prosecution later argued in the defendant's trial that the defendant's failure to cooperate with the State's psychiatrist was evidence that his insanity defense was being asserted in bad faith. In affirming the district court's grant of habeas relief, the Court of Appeals for the Ninth Circuit noted that

the Arizona Supreme Court had held, subsequent to the defendant's trial, that an accused could not be compelled to submit to a pretrial psychiatric examination by the state courts. The Court's decision, however, was not based on the fact that the defendant's counsel had not been present during the defendant's confrontation with the State's psychiatrist, but upon the prosecution's misconduct, misconduct which the Court felt was clearly intended to circumvent the rights of the accused. In fact, contrary to petitioner's assertion, the *Schantz* court specifically declined to reach the issue of whether an accused has the right to have counsel present at a pretrial mental examination. *Schantz v. Eyman, supra at p. 14, fn. 8.*

A majority of the courts that have considered the issue have held that "a defendant has no federal or state constitutional right to have his attorney present during a psychiatric examination conducted at the instance of the prosecutor." *United States v. Albright, 388 F.2d 719, 726 (4th Cir. 1968),* quoting with approval from *State v. Whitlow, 45 N.J. 3, 290 A.2d 763 (1965).* See also *United States v. Fletcher, 329 F.Supp. 160, 162 (D.D.C.1971); United States v. Baird, 414 F.2d 700 (2d Cir. 1969); United States ex rel. Stukes v. Shovlin, 464 F.2d 1211 (3d Cir. 1972); United States v. Bohle, 445 F.2d 54 (7th Cir. 1971); United States v. Greene, 497 F.2d 1068 (7th Cir. 1974).* The underlying rationale in many of these decisions is that a psychiatric examination requested by the prosecution and conducted by a physician designated by the prosecution who may later testify at the trial on the issue of insanity does not constitute a "critical" stage of the proceedings constitutionally requiring notice and presence of counsel. *United States ex rel. Wax v. Pate, 409 F.2d 498, 499 (7th Cir. 1969), cert. denied, 396 U.S. 830, 90 S.Ct. 83, 24 L.Ed.2d 81 (1969).*

This Court agrees with the analysis and reasoning in the above cited decisions. It is difficult for this Court to imagine what benefit, if any, could be derived from requiring the State to allow the accused's counsel to be present during a pretrial mental examination, particularly where, as in this case, the record reveals that the State's expert witness was extensively and thoroughly cross examined by petitioner's able counsel not only with respect to the witness' ultimate conclusion, but his expert qualifications as well. In view of the absence of any right to have counsel present during a pretrial mental examination and the absence of any resulting prejudice to petitioner, this court finds that petitioner incurred no constitutional deprivation from the lack of notice to, or the presence of, petitioner's counsel during the pretrial mental examination conducted by Dr. Yohe.

## II.

The petitioner contends that he was denied due process of law by the state trial court's allowance of the petitioner's absence during certain stages of his trial. Petitioner contends that his presence during six *in camera* hearings could have resulted in a change in the state trial court's rulings inasmuch as petitioner could have assisted his counsel in the cross examination of witnesses which testified on behalf of the State during the hearings in question or, in the alternative, by testifying or providing information contrary to that which was submitted to the state court by witnesses for the prosecution. Petitioner alleges that the state trial court's failure to require his presence during the six in-chambers conferences in question not only denied him due process of law as contemplated by the Fifth Amendment, but deprived him of his Sixth Amendment rights to the effective assistance of counsel and to confront the witnesses against him as well.

The respondent contends that petitioner suffered no constitutional deprivations under either the Fifth or Sixth Amendments. More specifically, the respondent urges that petitioner was not prejudiced by his absence from the in-chambers conferences inasmuch as the conferences dealt merely with evidentiary questions and questions of law regarding the propriety of prospective questions which the prosecution sought to pro-

pound. Respondent further argues that the prejudice, if any, which may have resulted from the petitioner's absence was self induced in that petitioner voluntarily absented himself from the proceedings in question.

It should be noted at the outset that petitioner presented no evidence with respect to this issue at the evidentiary hearing conducted by the court on June 15, 1978. And, while both petitioner and his counsel were present at the hearing, neither has, to this date, offered any explanation to this court as to why petitioner was absent during the in-chambers proceedings in question. The court must therefore look exclusively to the state court record in resolving this issue. The state court record clearly establishes that petitioner was present during all phases of his state court trial with the exception of the six in-chambers hearings in question. The state court record further establishes that petitioner's two trial attorneys were present at all phases of petitioner's trial, including the hearings in issue. Other than affirmatively establishing that petitioner was, in fact, absent from the in-chambers hearings, the state court record is silent as to the reason for his absence. The record does reveal, however, that one of petitioner's lawyers was asked prior to the commencement of the first in-chambers hearing in issue, whether he wanted petitioner present. The lawyer's response was, "We don't know, we don't know what is going to happen." The record further reveals that the petitioner's trial lawyers never interposed an objection to the state court proceeding in the absence of the petitioner.

■ As has been previously noted, petitioner contends that he was denied due process of law by the state trial court's allowance of his absence during certain stages of his trial. Petitioner's contention erroneously assumes an affirmative duty on the part of the state court to see that petitioner is present during the trial. A similar argument was rejected by the United States Supreme Court in *Taylor v. United States, 414 U.S. 17, 94 S.Ct. 194, 38 L.Ed.2d 174 (1973).* In *Taylor, supra,* the defendant failed to return to the courtroom after the morning session of the first day of trial. The judge recessed the trial until the following morning, but the defendant still did not appear. The court, after making inquiry as to the defendant's whereabouts, found that the defendant had absented himself voluntarily from the proceedings and ordered that the trial proceed. In attacking the conviction which resulted from the trial, the defendant argued that the court's action in proceedings with the trial in his absence deprived him of due process of law and his Sixth Amendment right to confront the witnesses against him. In declining to hold that Rule 43 of the Federal Rules of Criminal Procedure was unconstitutional or that the defendant had been deprived of any constitutional rights under the circumstances of the case, the Court made the following observation, an observation which is particularly appropriate to the issue presently before this court:

"Petitioner, however, insists that his mere voluntary absence from his trial cannot be construed as an effective waiver, that is, "an intentional relinquishment or abandonment of a known right or privilege," *Johnson v. Zerbst, 304 U.S. 458, 464, 58 S.Ct. 1019, 1023, 82 L.Ed. 1461 (1938),* unless it is demonstrated that he knew or had been expressly warned by the trial court not only that he had a right to be present but also that the trial would continue in his absence and thereby effectively foreclose his right to testify and to confront personally the witnesses against him.

Like the Court of Appeals, we cannot accept this position. Petitioner had no right to interrupt the trial by his voluntary absence, as he implicitly concedes by urging only that he should have been warned that no such right existed and that the trial would proceed in his absence." *414 U.S. at 19–20, 94 S.Ct. at 195.*

■ Another erroneous assumption upon which petitioner's argument is premised is that the in-chambers hearings

were critical stages of the prosecution. While the petitioner was unquestionably entitled to be present during his trial, the assumption that his presence was constitutionally mandated at each and every proceeding ancillary thereto has no basis in law. To be sure, the petitioner had a "right to be present" at his trial. That right, however, as with most rights, is not absolute. As in the case of most constitutionally guaranteed rights, an accused's right to be present at trial is subject to limitations and exceptions. Thus, an accused may waive his right to be present at trial by voluntarily absenting himself from the trial. *Taylor, supra; Hayton v. Egeler, 405 F.Supp. 1133 (E.D.Mich.1975)*. Furthermore, an accused's absence from proceedings which are not directly related to the issue of guilt or innocence present no issues relating to due process deprivations inasmuch as the accused's right to be present is constitutionally required only whenever his "presence has a relation, reasonably substantial, to the fullness of his opportunity to defend against the charge." *Snyder v. Massachusetts, 291 U.S. 97, 105–106, 54 S.Ct. 330, 332, 78 L.Ed. 674 (1934)*. The Fourteenth Amendment does not assure "the privilege of presence when presence would be useless, or the benefit but a shadow." *Id. at 106–107, 54 S.Ct. at 332*. Thus, where an accused's absence from a particular proceeding, or portion of the proceedings, does not impair his ability to defend against the charge, the accused has suffered no deprivation of due process as envisioned by the Fifth and Fourteenth Amendments to the United States Constitution. *See, e. g., Root v. Cunningham, 344 F.2d 1 (4th Cir. 1965), cert. denied, 382 U.S. 866, 86 S.Ct. 135, 15 L.Ed.2d 104 (1965)* (No constitutional deprivation where defendant was not present during conference in which judge and attorneys for the respective parties went over instructions to be given to the jury); *Garcia v. Turner, 297 F.2d 881 (10th Cir. 1961), cert. denied, 370 U.S. 950, 82 S.Ct. 1598, 8 L.Ed.2d 815, rehearing denied, 371 U.S. 856, 83 S.Ct. 96, 9 L.Ed.2d 95 (1962)* (Defendant's absence at time that a juror approached trial judge during recess and made inquiry as to whether either side would introduce recorded conversations between two defendants, did not deny defendant due process on ground that he was deprived of right to be present at all stages of trial when trial judge did not express any opinion as to defendant's guilt or comment on the weight or sufficiency of the evidence or otherwise discuss the trial); *Snyder v. Massachusetts, 291 U.S. 97, 54 S.Ct. 330, 78 L.Ed. 674 (1934)* (No due process violation where jury was permitted to view alleged scene of crime in the absence of defendant where defendant was represented by counsel which attended jury's view and pointed out specific characteristics of the physical setting); *Polizzi v. United States, 550 F.2d 1133 (9th Cir. 1976)* (Defendant's and defendant's counsel's absence during trial court's post verdict interrogation of jury with respect to the issue of prejudicial pretrial publicity did not deprive defendant of due process or his Sixth Amendment right to confront the witnesses against him).

In the present case, petitioner was not present during six in-chambers hearings, each of which dealt with either the admissibility of some specific item of evidence or the propriety of a question or questions which the prosecution desired to propound. Petitioner's contention that he was denied his Sixth Amendment rights to the effective assistance of counsel and to confront the witnesses against him is without merit since petitioner was represented at each hearing by two able and distinguished attorneys, neither of which objected to proceeding in petitioner's absence, and since each witness who testified on behalf of the State was later subjected to a vigorous and searching cross examination by petitioner's counsel during the trial itself. In addition, petitioner has failed to establish that his absence from the hearings was anything other than an act of his own volition or that his ability to defend against the charge was compromised by his absence from the hearings in question, i. e., petitioner has failed to establish that his presence during the six in-chambers hearings had "a

relation, reasonably substantial, to the fullness of his opportunity to defend against the charge." *Snyder, supra*. For each of the above and foregoing reasons, the court finds that petitioner was neither deprived of due process nor his Sixth Amendment right to the effective assistance of counsel by the state trial court's actions in proceeding with the *in camera* hearings in question during petitioner's absence.

### III.

As his last argument, petitioner contends that he was denied due process of law by the state trial court's failure, *sua sponte,* to conduct a pretrial hearing to determine whether petitioner was mentally competent to proceed to trial. The respondent contends that the state trial court complied with all existing statutory requirements relative to a determination of the issues of insanity and mental competency to proceed to trial; that the state trial court did, in fact, judicially determine that the petitioner was mentally incompetent to proceed to trial at one stage of the proceedings; that petitioner was not tried until all doubt as to petitioner's competency to assist in his own defense or to understand the proceedings had been resolved; and that the circumstances of petitioner's case did not require an evidentiary hearing to determine his competency to stand trial. Neither party presented any additional evidence to the court with respect to this issue other than the state court record. Before identifying the precise issue which the court must resolve, it is appropriate to review the legal basis of petitioner's claim in order that his claim might be scrutinized in the proper prospective.

As Judge Henley observed in the case of *Baumgarner v. Lockhart, 361 F.Supp. 829 (E.D.Ark.1973),* there is a difference between the concept of "insanity" and mental competency to stand trial. The former concept relates to the merits of the case and, if established to the satisfaction of the trier of fact, provides a complete defense to a criminal charge. Thus, a person is legally insane if he is incapable of

forming the requisite culpable mental state which, if coalesced with the prohibited physical act, would result in the commission of a criminal offense. Mental competency to stand trial, on the other hand, implicates constitutional standards with regard to procedural fairness. A showing that an accused is mentally incompetent to proceed to trial does not establish a defense to the substantive charge, but rather mandates a continuation of the trial until such time as the accused is mentally capable of proceeding. Consequently, it is a deprivation of due process to put a person to trial on a criminal charge if he is not mentally competent to stand trial. *Id. at 833.* The constitutional deprivation in such cases stems from the inability of the accused to intelligently comprehend the nature of the proceedings in which he is involved and to assist in his own defense. *Dusky v. United States, 362 U.S. 402, 80 S.Ct. 788, 4 L.Ed.2d 824 (1960).* Furthermore, the question of whether an accused was mentally competent to stand trial may be properly raised within the context of a federal habeas corpus proceeding. *Pate v. Robinson, 383 U.S. 375, 86 S.Ct. 836, 15 L.Ed.2d 815 (1966); Bishop v. United States, 350 U.S. 961, 76 S.Ct. 440, 100 L.Ed. 835 (1956).*

The gist of petitioner's present claim is that the state trial judge determined that he was mentally competent to stand trial without conducting an evidentiary hearing for that purpose. Since the parties agree that the state trial court did not conduct an evidentiary hearing after the State Hospital certified that petitioner was mentally competent to stand trial and assist in his own defense, the court must determine, from a review of the state court record, whether the circumstances of petitioner's case required a due process hearing prior to the judicial determination that petitioner was mentally competent to proceed to trial and assist in his own defense.

A trial judge is not constitutionally compelled to conduct an evidentiary hearing in every case where there is an allegation that the accused is not mentally competent to stand trial. Due process re-

quires an evidentiary hearing for the purpose of determining competency to proceed only where the evidence before the court raises a bona fide doubt as to the defendant's competency to stand trial. *Pate v. Robinson, supra; Wolf v. United States, 430 F.2d 443 (10th Cir. 1970)*. The ultimate question, therefore, does not relate to any specific or prescribed number of hearings, but rather to the issue of whether the evidence creates sufficient doubt as to warrant an evidentiary hearing. We proceed to an analysis of that question.

The state court record reveals that petitioner interposed a plea of "not guilty by reason of insanity" at the time he was initially arraigned on a charge of first degree murder. The insanity plea was renewed in the state trial court and petitioner, by order dated January 30, 1967, was committed to the Arkansas State Hospital for not more than one month for psychiatric observation and evaluation. The order committing petitioner to the State Hospital directed the Superintendent to have petitioner examined and to make a written report to the state court, a written report which was to separately indicate petitioner's mental condition during the period of examination and his probable mental condition at the time of the alleged offense. In response to a motion by petitioner's trial counsel, the state court, by order dated February 16, 1967, directed the Superintendent of the Arkansas State Hospital to provide petitioner's private psychiatrist with free access to petitioner during his initial period of confinement at the hospital. On February 28, 1967, the physician who examined petitioner at the Arkansas State Hospital filed a report with the state trial court. The report provided in pertinent part as follows:

"The following is a true and correct report of the findings in this case:

Diagnosis: Manic Depressive Reaction, Manic type.

It is the opinion of the examining physician and the joint opinion of the psychiatric staff that Allen Davis was mentally ill to the degree of legal irresponsibility at the time of the mental examination.

It is further the opinion of the examining physician and the joint opinion of the psychiatric staff that Allen Davis was probably mentally ill to the degree of legal irresponsibility at the time of the alleged commission of his acts."

Several letters were thereafter exchanged between various administrators at the Arkansas State Hospital and the state trial judge. The letters, which are a part of the state court record, indicate that the state trial judge felt the report from the Arkansas State Hospital was insufficient inasmuch as the report failed to provide the facts upon which the medical conclusions of the hospital staff were based. Several letters from members of the staff of the Arkansas State Hospital to the state trial judge requested that an order of commitment issue so that the Hospital could lawfully retain custody of petitioner for treatment. The state trial judge repeatedly declined to issue an order of commitment until the State Hospital furnished sufficient information to allow the state court to make the factual determinations necessary for the issuance of an order of commitment.

The disagreement between the state trial judge and the staff members of the Arkansas State Hospital was ultimately terminated on March 31, 1967, when the State petitioned the court for an order compelling the State Hospital to turn over to the prosecuting attorney all medical records relating to petitioner's case. By an order dated March 31, 1967, the state trial court granted the State's petition. The next official action by the state trial court occurred on May 19, 1967. On that date the state court entered an order directing the Superintendent of the Arkansas State Hospital to make the petitioner available for examination by expert witnesses for the State. A psychiatrist subsequently examined petitioner on behalf of the State and reported his findings to the Prosecuting Attorney by a letter dated June 19, 1967. The relevant portions of the psychiatrist's report are as follows:

"I examined the above individual at the state hospital last Wednesday, June 14, 1967, examined all available records, and

discussed the case with his physical (physician), Dr. Walters.

It was my decision and conclusion that Allen Frank Davis is at present sane and competent. He is quite able to understand the charges against him, and he is quite able to aid his attorney in his defense . . .

From this interview, from the examination of all available hospital records, and from my perusal of interrogatories from your office, it is also my opinion that Allen Frank Davis was sane and competent on January 19, 1967, at 7:00 P.M.

Further details and rationale to "back up" the above opinions are available from this office upon request."

The letter was addressed to Walter G. Wright, Prosecuting Attorney, and was signed by Charles D. Yohe, M.D. On June 20, 1967, the day after the psychiatrist's report to the prosecuting attorney, the state trial judge wrote a letter to the Superintendent of the Arkansas State Hospital denying the Hospital's request for an order committing petitioner for treatment. The letter further directed the Superintendent to surrender custody of the petitioner to the Sheriff of Garland County, Arkansas.

The next relevant development in the trial court occurred on February 1, 1968. Having unsuccessfully petitioned the Arkansas Supreme Court for a writ of prohibition, the petitioner's lawyers filed a motion for a continuance with the state trial court. The motion for a continuance alleged that the petitioner was mentally incompetent and could not assist his counsel in preparing a defense to the charge pending against him. The motion requested a postponement of the trial scheduled for February 7, 1968, and further requested that petitioner be recommitted to the Arkansas State Hospital. While the record does not conclusively establish that a hearing was conducted with regard to petitioner's motion for a continuance, the record does indicate that the state trial court acted upon the petitioner's motion by an order dated February 7, 1968. The material portions of the state trial

court's order of February 7, 1968 are as follows:

"2. That the evidence is sufficient to determine that the defendant presently needs psychiatric treatment and that, upon defendant's not guilty plea herein, the above styled criminal action, heretofore set for trial on February 7, 1968, should be continued until such time as the defendant is able to intelligently assist his attorneys in his own defense.

3. That defendant should be committed to the Arkansas State Hospital until such time as the defendant is mentally able to intelligently assist his attorneys in the preparation of his own defense to the charge pending against him in this action."

The order committed petitioner to the Arkansas State Hospital "until such time as said hospital shall certify to this court that defendant is mentally able to intelligently assist in his own defense to the charge pending against him in this action." Pursuant to the provisions of the state trial court's order of February 7, 1968, the Superintendent of the Arkansas State Hospital filed a report concerning the status of petitioner's competency to stand trial. The report, which was dated April 9, 1968, stated in part:

"Mr. Davis was presented to the Psychiatric staff on April 8, 1968 and it was the majority opinion that he is now in remission of his previous mental illness. It was further the majority opinion that he is now competent and able to assist in his defense."

The report was addressed to the state trial judge and was signed by Dr. George W. Jackson, Superintendent of the Arkansas State Hospital. The April 9, 1968 report shows on its face that copies of the report were sent to the prosecuting attorney and one of petitioner's lawyers.

■ The narrow issue which the court must resolve is whether, following the April 9, 1968 report from the Arkansas State Hospital, there was sufficient evidence before the state trial court to raise a bona fide doubt as to the petitioner's competency to

**1320**

stand trial. As the state court record reflects, petitioner was committed to the Arkansas State Hospital for psychiatric evaluation and treatment from February of 1967 until sometime after June 20, 1967. During this initial commitment petitioner was examined not only by the staff of the State Hospital but by his own private psychiatrist as well. The only psychiatric finding during this period which specifically dealt with petitioner's competency to stand trial was rendered by Dr. Charles D. Yohe, the State's expert witness. Dr. Yohe's report of June 19, 1967 concluded that petitioner was able to understand the charges against him and to assist in his own defense. Dr. Yohe's finding of competency to stand trial was not challenged or placed in issue until petitioner moved for a continuance of his trial on February 1, 1968. That motion contended that petitioner was not mentally competent to stand trial or assist in his own defense. Petitioner was thereafter committed to the custody of the Arkansas State Hospital for care and treatment until the Hospital could certify that petitioner was competent to understand the nature of the proceedings in which he was involved and to assist in his own defense. Petitioner's second commitment to the Arkansas State Hospital extended from the early part of February, 1968 until the early part of April, 1968. Petitioner's second commitment terminated with the Arkansas State Hospital's report of April 9, 1968, a report which concluded that petitioner was mentally competent to stand trial and to assist in his own defense. The state court record does not establish that petitioner's two able trial lawyers ever objected to the conclusions set forth in the April 9th report or that a hearing was ever requested with respect to the issue of petitioner's competency to stand trial. Thus, in view of the facts that petitioner was examined by his own independent psychiatrist, that at least one of his attorneys was provided with a copy of the State Hospital's report of April 9, 1968, that neither of petitioner's trial counsel ever objected to the State Hospital's report with respect to the issue of competency to stand trial, that no hearing was requested on the issue of competency to stand trial and that

no evidence was offered after the April 9th report which would justify an inference of incompetency, this court must conclude that petitioner's counsel accepted the State Hospital's report and that there was no evidentiary basis for contesting the finding of competency. This court, accordingly, finds that petitioner was not denied due process by the state trial court's failure to conduct an evidentiary hearing, *sua sponte,* following the Arkansas State Hospital's report of April 9, 1968, *cf. Griggs v. Swenson, 352 F.Supp. 743 (W.D.Mo.1973)* (state defendant was not denied due process by trial court's failure to hold an evidentiary hearing on the issue of competency to stand trial after completion of mental examination, where counsel was familiar with and accepted the report, concluded that there were no proper grounds for contesting findings of competency and requested no hearing).

Writ denied.