Ellen Mae RANDLEMAN *v.* STATE of Arkansas

CR 92-264                                    837 S.W.2d 449

Supreme Court of Arkansas
Opinion delivered September 21, 1992

412

*Davis & Assoc.*, by: *Charles E. Davis*, for appellant.

*Winston Bryant*, Att'y Gen., by: *Kent G. Holt*, Asst. Att'y Gen., for appellee.

STEELE HAYS, Justice. This is an appeal from a jury verdict convicting Ellen Mae Randleman of two counts of delivery of a controlled substance and four counts of possession of a controlled substance with intent to deliver, resulting in sentences totalling twenty-three (23) years in the Arkansas Department of Correction.

On appeal, Ms. Randleman challenges the trial court's order that she be evaluated at the State Hospital pursuant to Ark. Code Ann. § 5-2-305(d)(1-5) (Supp. 1991) and its ruling that inculpatory statements made by her to the State Hospital psychiatric examiners were admissible for purposes of impeachment under an exception to the psychotherapist-patient privilege contained in Ark. R. Evid. 503(d)(2). Ms. Randleman contends that the court order for psychiatric evaluation and the admission of the statements in the psychiatric forensic report violated her Fifth Amendment right against self-incrimination and her Fourteenth Amendment due process right.

Ellen Mae Randleman was employed as an undercover police officer. She worked with Rick Adamson, an undercover paid informant for the drug task force. Randleman and Adamson had worked together on some ten cases in Stone and Izard Counties when her father was diagnosed as being terminally ill with cancer. Shortly after her father's death in April 1989, Randleman contacted Adamson to ask the worth of her father's remaining narcotic prescription drugs. Later, she gathered all of her father's medicine, took it to Adamson and asked him to sell it for her.

On or about July 19, 1989, Adamson contacted Steve Brondhaver, Chief Deputy for Stone County, and informed him of the appellant's actions. On July 20, 1989, Adamson and Brondhaver met with Lonnie Cox, a special agent with the FBI. Later that evening, Adamson met Brondhaver at the Stone County Police Department and delivered the drugs to him. He was interviewed by Brondhaver, Dale Weaver, administrator of the drug task force, and Jack Yancey, sheriff of Izard County, at Yancey's house. Adamson then recorded a telephone conversation with appellant in which he told her he had sold some of the drugs and had the money for her. They made arrangements for her to go to Adamson's house later that evening and be paid five hundred dollars ($500.00). Randleman arrived at Adamson's house at approximately 9:15 p.m. and collected her money. The conversations of Randleman and Adamson were also recorded.

After leaving the residence, Ms. Randleman was arrested. During an inventory search of her car, Weaver and Brondhaver recovered the money given to Randleman for the drugs. In a recorded statement immediately after her arrest, appellant stated that her father's death had been an extreme financial drain on her family and that she had obtained the controlled substances in an effort to sell them and acquire some badly needed money.

Ms. Randleman filed three consecutive motions for a continuance upon an allegation that she was "undergoing intensive psychological testing and evaluation," all of which were granted. Additionally, she indicated an intention to call a clinical psychiatrist as a defense witness, and she alleged that the state did not perform the necessary psychological testing and evaluation before she was employed as an undercover operator. At that point

the state filed a motion for a psychiatric evaluation of Ms. Randleman at the Arkansas State Hospital. The trial court granted the motion over an objection that the defense of mental disease or defect had not been raised. In due course, the Arkansas State Hospital reported that Ms. Randleman was fit to proceed and had the capacity to conform her conduct to the requirements of the law.

## I

## THE TRIAL COURT ERRED IN ORDERING THE APPELLANT TO BE EVALUATED BY THE ARKANSAS STATE HOSPITAL

The actions of the trial court in ordering the psychiatric examination of the appellant are covered by statute. Specifically, Ark. Code Ann. § 5-2-305 (Supp. 1991) provides:

> (a) Whenever a defendant charged in circuit court: (1) Files notice that he intends to rely upon the defense of mental disease or defect, *or there is reason to believe that mental disease or defect of the defendant will or has become an issue in the cause*; or

> (2)Files notice that he will put in issue his fitness to proceed, *or there is reason to doubt his fitness to proceed*, the court, subject to the provisions of §§ 5-2-304 and 5-2-311, shall immediately suspend all further proceedings in the prosecution. . . [Emphasis added.]

There are, as well, relevant provisions in Ark. Code Ann. § 16-86-102(a) (1987):

> (a) Whenever a prosecution for any crime has been instituted in the circuit court by indictment or information and the defense of insanity at the time of the trial or at the time of the commission of the offense has been raised on behalf of the defendant and becomes an issue in the cause, or the circuit judge has reason to believe that the defense of insanity will be raised on behalf of the defendant and will become an issue in the cause *or shall be of the opinion that there are reasonable grounds to believe that the defendant was insane at the time of the alleged commission of the offense*, the judge shall postpone all

other proceedings in the cause and shall either enter an order directing that the defendant undergo examination and observation by one (1) or more qualified psychiatrists at a local regional mental clinic or center or shall commit the defendant to the Arkansas State Hospital for examination and observation. [Emphasis added.]

In addition to the statutory authority to require a psychiatric examination whenever necessary, the trial court has the inherent authority to raise the defense of mental disease or defect if it has reason to doubt a defendant's fitness to proceed. *See, Hudson* v. *State*, 303 Ark. 637, 799 S.W.2d 529 (1990); *Griffin* v. *State*, 25 Ark. App. 186, 755 S.W.2d 574 (1988).

The appellant's argument is based on the fact that she did not raise a competency defense and her mental fitness was not at issue. She argues that her intention to introduce psychological evidence as to her ability to meet the state's standards to be a certified undercover officer is not the same as asserting an incompetency defense or an insanity plea. Appellant cites *Schantz* v. *Eyman*, 418 F.2d 11 (9th Cir. 1969) and *Davis* v. *Campbell*, 465 F. Supp. 1309 (1979), but these cases are off the mark. They do state that an accused may not be compelled to submit to a pre-trial psychiatric examination by the state courts, but the decisions are based on misconduct by the prosecution and involve the right to have counsel present during a pre-trial mental examination. In contrast, here there was good reason to doubt the appellant's fitness to proceed and to believe that mental disease or defect could become an issue based on appellant's three motions for continuances alleging that she was "undergoing intensive psychological testing and evaluation."

Also, appellant requested the file of Dr. David C. Loe, a psychologist who examined her when she worked for the Judicial Task Force. The state anticipated that the defense might use an initial report in which Dr. Loe recommended the appellant for police work but stated that she might be somewhat naive. In addition, appellant listed Alan G. Tufts, a clinical psychologist in Rogers, Arkansas, as a witness to be called at trial.

Finally, in her response to the state's motion for discovery, the appellant stated that she would "defend on the grounds of general denial and that the State did not perform the necessary

psychological testing and evaluation of the defendant before employment as an undercover operator."

Although the results of the psychiatric evaluation revealed that the appellant had the capacity to appreciate the criminality of her conduct at the time of the offense charged and was capable of cooperating with her attorney in the preparation of her defense, the trial court did not err in ordering the examination. It was not unreasonable for the trial court to anticipate that the mental condition of the appellant might become an issue in the case.

## II

## THE TRIAL COURT ERRED IN ALLOWING THE STATE TO USE THE RESULTS OF THE COURT ORDERED FORENSIC EXAMINATION FOR THE PURPOSES OF IMPEACHMENT

During its case in chief, the state attempted to offer the statements the appellant made to Dr. Wendell O. Hall during her evaluation at the State Hospital. The appellant objected to Dr. Hall's testimony concerning appellant's inculpatory statements. When the state attempted to introduce the forensic report, the appellant objected and the court sustained the objection. Appellant testified in her own behalf and during cross examination, the state attempted to impeach her by using the statements in the forensic report. Defense counsel again objected but the trial court overruled the objection and allowed the introduction of the forensic report. The state then used the forensic report to point out inconsistencies between the statements in the report and the appellant's testimony at trial. Ark. Code Ann. § 5-2-307 (1987) states as follows:

> Any statement made by a person during examination or treatment shall be admissible as evidence only to the extent permitted by the Uniform Rules of Evidence, but only if such statement is constitutionally admissible.

Ark. R. Evid. 503(b) provides:

> A patient has a privilege to refuse to disclose and to prevent any other person from disclosing his medical records or confidential communications made for the purpose of diagnosis or treatment of his physical, mental or

emotional condition, including alcohol or drug addiction, among himself, physician or psychotherapist, and persons who are participating in the diagnosis or treatment under the direction of the physician or psychotherapist, including members of the patient's family.

(d) Exceptions:

(2) Examination by order of court. If the court orders an examination of the physical, mental, or emotional condition of a patient, whether a party or a witness, communications made in the course thereof are not privileged under this rule with respect to the particular purpose for which the examination is ordered unless the court orders otherwise.

Thus, a patient has a privilege to prevent any other person from disclosing confidential communications made for the purpose of diagnosis or treatment of his mental or emotional condition. *See Gruzen* v. *State*, 267 Ark. 380, 591 S.W.2d 342 (1979), cert. denied, 449 U.S. 852, 101 S.Ct. 144, 66 L.Ed. 2d 64 (1980), 459 U.S. 1020, 103 S.Ct. 386, 74 L.Ed. 2d 517 (1982). But Rule 503(b) does not grant a privilege to "any information," only "communications" between the patient and doctor, and confidential ones at that. *Baker* v. *State*, 276 Ark. 193, 637 S.W.2d 522 (1982).

Appellant relies on *Estelle* v. *Smith*, 451 U.S. 454 (1981). In *Estelle*, the United States Supreme Court held that the admission of a psychiatrist's testimony at the penalty phase violated respondent's Fifth Amendment privilege against compelled self-incrimination because he was not advised before the pretrial psychiatric examination that he had a right to remain silent and that any statement he made could be used against him at a capital sentencing proceeding.

*Estelle* is distinguishable because the prosecutor there used the information to prove future dangerousness at the sentencing hearing. In the present case, the forensic report was used for the limited purpose of impeaching the appellant. Also, the court's decision in *Estelle* was based on the fact that the respondent was not given *Miranda* warnings prior to the psychiatric examination. Although the record in the case at bar is silent

with respect to *Miranda* rights prior to the evaluation, appellant did not raise the issue at the trial court level.

The record reveals that appellant's testimony clearly contradicted her statements at the state hospital. She testified that her supervisor, Dale Weaver, knew of her plan to get Rick Adamson to buy the drugs from her as a way to build credibility within the drug culture. She also stated that she had lied in her original statement to the police. Due to these prior inconsistent statements, the evaluation report was necessary to connect the statements appellant gave to the state hospital personnel with those she made on the tapes and in her statement to the police.

■ We believe the statement at the hospital came within the exception provided in Ark. R. Evid. 503(d)(2) for examinations by order of the court. It seems logical that communications made to a psychiatrist should not be privileged when the court initiated the examination. Weinstein comments on this subject as follows:

> The second exception—for court ordered examinations—is necessary for the effective utilization of this important and developing procedure. "(T)he purpose of the examination would be totally frustrated if the examined party's revelations to the psychotherapist were privileged." It is arguable that such an exception need not even have been included in the rule, either because a patient examined on court order is not consulting a psychotherapist "for purposes of diagnosis or treatment" or because these circumstances negate confidentiality. The exception is effective only with respect to the particular purpose for which the examination is ordered."

Jack B. Weinstein, Margaret Berger, *Weinstein's Evidence*, § 504(07), at 504-33 (1980). [Citations omitted.]

We think some analogy can be found between this case and those instances where custodial statements by an accused are rendered inadmissible (as, for example, lack of a timely arraignment), but may nevertheless be used to impeach the defendant whose trial testimony contradicts such statements, provided the statements were not the product of coercive police tactics. *Muncey* v. *Arizona*, 437 U.S. 385 (1978). No such stigma is

suggested in this case.

■ We conclude appellant's Fifth Amendment right against self-incrimination and her Fourteenth Amendment due process rights were not violated by the use of the psychiatric forensic report to impeach her testimony.

Affirmed.