Duane COURTEAU and Dollie Courteau as Guardians for
the Estate of Timothy Courteau *v.* ST. PAUL FIRE &
MARINE INSURANCE COMPANY, Peter Marvin and
Fran Duke

90-307                                             821 S.W.2d 45

Supreme Court of Arkansas
Opinion delivered December 23, 1991

514

*Perroni, Rauls, Looney & Barnes, P.A.*, by: *Stanley D. Rauls* and *Samuel A. Perroni*, for appellant.

*Barber Law Firm*, by: *Michael E. Hale*; *Mitchell, Williams, Selig & Tucker*, by: *R.T. Beard, III*; *Friday, Eldridge & Clark*, by: *Laura Hensley Smith* and *Calvin J. Hall*, for appellees.

ALBERT GRAVES, JR., Special Chief Justice. This appeal arises from a malpractice action brought by Guardians of the Estate of Timothy Courteau (Appellants) against certain Physicians and a liability insurance carrier, during which the court denied Appellants access to statements given to Appellees' attorney in her initial investigation. We affirm.

On July 2, 1986, while swimming in the Arkansas River, Timothy Courteau (Courteau) fractured his spinal column causing paralysis of both legs. He was hospitalized in North Little Rock Memorial Hospital (Memorial). After surgery, the breathing tube which had been inserted through his nose into his trachea was connected to a mechanical ventilator to assist his breathing. In the early morning of July 6, 1986, the breathing tube was discovered dislodged. Dr. Fran Duke, an emergency room physician for Memorial, repositioned it later that morning. Apparently, during the period between the displacement and replacement of the tube, Courteau suffered cardiac arrest and brain damage from oxygen insufficiency.

On July 9, 1986, Memorial's Administrator notified the hospital's insurance carrier, St. Paul Fire & Marine Insurance Company (St. Paul), of the occurrence, and St. Paul, through its Claims Representative, Chris LaLande, retained Laura Hensley of the firm of Friday, Eldridge, and Clark. Ms. Hensley immediately requested statements from employees involved who were potential defendants. The requests of the attorney were relayed by the claims representative to the Hospital Administrator, who, through Memorial's chain of command, conveyed the request to the employees. On the 10th of July Ms. Hensley met with the employees involved and with Dr. Duke, from whom she also asked

for a statement. Ms. Hensley asked that all of the statements include thoughts, opinions, and conclusions.

On February 18, 1988, Appellants filed suit against St. Paul. They later amended the complaint to include Dr. Peter Marvin, Dr. Doyne Dodd, and Dr. Fran Duke. The complaint against Dr. Dodd was dismissed by summary judgment.

Attorneys for Appellants began to take depositions of Memorial's employees, several of whom had given statements to Ms. Hensley in 1986. After some confusion, Appellants' counsel discovered the existence of the statements, but Appellees' attorneys objected to all efforts to obtain them, to have the witnesses refresh their memories with them, or to allow the trial judge to review them. Both at pre-trial hearings and during the trial, the trial court refused Appellants' requests, holding the statements to be attorney-client communications and absolutely privileged.

The case was tried before a jury, nine of whom rendered a verdict for all defendants. After the trial court denied Appellants motion for new trial, Appellants appealed.

Appellants rely on three points for reversal. First, they contend that the written statements given to Ms. Hensley are not entitled to protection under the attorney-client privilege for four reasons: the communications (statements) were not made to or for a lawyer; they were not made for the purpose of facilitating the rendition of legal services; the witnesses were not the clients nor representatives of a client of Ms. Hensley; and the communications were not confidential. The trial court found to the contrary, and we agree.

Arkansas Rules of Evidence 502 provides in part:

(1)(1)   A "client" is a person, public officer, or corporation, association, or other organization or entity, either public or private, who is rendered professional legal services by a lawyer, or who consults a lawyer with a view to obtaining professional legal services from him.

(a)(2)   A ["]representative of the client["] is one having authority to obtain professional legal services, or to act on advice rendered pursuant thereto, on behalf of the client.

(b)   General Rule of Privilege. A client has a privilege to

refuse to disclose and to prevent any other person from disclosing confidential communications made for the purpose of facilitating the rendition of professional legal services to the client (1) between himself or his representative and his lawyer or his lawyer's representative. . . (4) between representatives of the client or between the client and a representative of the client. . . .

■ Who are the clients? The evidence is undisputed that when Memorial's Administrator became alarmed on July 9, having heard of the untoward events involving Courteau, Memorial's E.R. physician, and several employees, he sought assistance from the hospital's carrier. St. Paul then retained Laura Hensley. It did so to protect itself and its insureds under the policy, who were Memorial, Dr. Duke, and all employees who were potential defendants. All those entitled to the protection of St. Paul's policy covering the incident became clients of St. Paul's retained counsel. Although Appellants do not contend that potential defendants are not entitled to representation, they object to the number claimed by Appellees without making objection to specific witnesses. It is important to note that potential defendants are to be determined at the time of the "communication" in the light of all the surrounding circumstances. We cannot say that those persons involved in the treatment of Courteau up to and through the events of July 6 were not potential candidates for suit.

■ Were the communications (statements) made "to or for" a lawyer? Ms. Hensley, the St. Paul claims representative, and the Administrator, Harrison Dean, all relate by affidavits that statements were to be obtained for delivery to Ms. Hensley. The same persons say that the request was made on July 9, after St. Paul had retained Ms. Hensley. It is apparent that the Appellants' attorneys are not convinced of the occurrence or the chronology of those events. The trial court was. Likewise, Appellants' observation that the attorney's request was relayed through corporate channels does not affect the result.

■ Appellants propose, although without much conviction, that the statements were not made for the purpose of facilitating the rendition of legal services. There is no doubt that Memorial was an insured of St. Paul and a client of Ms. Hensley. It is difficult to surmise how Ms. Hensley might have gone about

advising Memorial without obtaining from its employees information about their actions and observations which had occurred within the scope of their corporate duties. This acquisition is a necessary part of the corporate attorney's process of advising and protecting the corporate-employer client and is within the privilege. *Upjohn Co.* v. *United States*, 449 U.S. 383 (1981). Certainly Ms. Hensley would want to hear or read the employee's report of the incident to determine the extent of involvement and potential exposure of that particular employee-cleint.

As to whether such communications were confidential, we refer to Ark. Rules of Evid. 502(a)(5) which provides

A communication is "confidential" if not intended to be disclosed to third persons, other than those to whom disclosure is made in furtherance of the rendition of professional legal services to the client or those reasonably necessary for the transmission of the communication.

The statements were written personally by the witnesses and delivered to Ms. Hensley or to a hospital superior for transmission to her. These statements (communications) were requested and intended for no other person.

Appellants make much of the fact that the information requested by Ms. Hensley to be in the statements, should also have been included in regular hospital records. Even so, this does not color or taint the communication of similar or even identical information by the client to his or her attorney under the attorney-client privilege. It is not the information or the opinion that is privileged, but rather the communication of them to the attorney, in whatever form. Neither the requirement that the information also be provided to some other forum, nor its divulgence in response, will subvert the privilege. The United States Supreme Court in *Upjohn* quoted *Philadelphia* v. *Westinghouse Electric Corp.*, 205 F. Supp. 830, 831 (E.D. Pa 1962) as follows: " 'The protection of the privilege extends only to *communications* and not to facts. A fact is one thing and a communication concerning that fact is an entirely different thing. . . .' " *Id.* at 395-396.

The statements were made by clients and made at the request of and to inform their own and their corporate employer's

attorney for the purpose of facilitating her rendition of legal advice to both. As such, they are absolutely privileged.

Since the statements are absolutely privileged and may not be "discovered", it is not necessary that we decide Appellants' second and third points for reversal which are based upon the assumption that the statements are not communications within the privilege, but rather work-product or even some lesser form.

Affirmed.

HOLT, C.J., not participating.