Lise KRAEMER v. The Honorable John PATTERSON

00-816 29 S.W.3d 684

Supreme Court of Arkansas
Opinion delivered October 26, 2000

*David S. Mitchell*, for petitioners.

*Friday, Eldredge & Clark*, by: *Phil Malcom* and *Clifford W. Plunkett*, for respondent.

LAVENSKI R. SMITH, Justice. Petitioners Lise and Jeremie Kraemer seek a Writ of Certiorari to prevent enforcement of a Pope County Circuit Court order allowing the defendants in this medical malpractice case to call as an expert witness one of the plaintiff's treating physicians. The plaintiff filed this petition arguing that the circuit court improperly issued the order in violation of Rule 503 of the Arkansas Rules of Evidence. We agree and grant the writ.

*Facts*

In 1995, Lise received prenatal and obstetrical care from physician Dr. Jody Callaway. Lise proceeded to term and underwent a cesarean section due to the baby's breech presentation. The Kraemer's child, a daughter, was born with the birth defect known as spina bifida. Just over a year after the child's birth, Lise sought and obtained sterilization services from another local gynecologist, Dr. Joe Cloud. Subsequently, the Kraemers, individually and as natural parents and next friends of Wensday Kraemer, brought an action against Dr. Callaway alleging negligence in the provision of prenatal services. Specifically, the Kraemer's allege that Dr. Callaway failed to diagnose and inform them of Wensday's genetic defect of spina bifida and for violating the standard of care of a obstetrician and gynecologist in Russellville, Arkansas.

During the discovery process, the defense deposed Dr. Cloud regarding his subsequent treatment of Lise Kraemer. Thereafter, the defense filed a motion on August 16, 1999, to retain Dr. Cloud as a defense expert. The defense argued that it was necessary to obtain Dr. Cloud as an expert because he is one of only two other available obstetricians/gynecologists in Russellville who would qualify as an expert under Arkansas's "locality" rule. The defense argued that Dr. Cloud's treatment of Lise was unrelated to this proceeding. Furthermore, because Dr. Cloud's deposition already revealed privileged information, Rule 503 prohibiting *ex parte* communications between defense counsel and a treating physician no longer applies because there is no additional privileged information to be protected.

In response, the Kraemers argued that there are many physicians who are qualified to testify as defense experts in this case, and that prior to the defense's motion, defense counsel contacted Dr. Cloud without the Kraemers' consent. On appeal, the Kraemers argue that the respondent's sole authority is based on out-of-state precedent based upon laws and rules dissimilar to Arkansas's. Furthermore, the Kraemers argue that Rule 503 unequivocally prohibits *ex parte* communications with a patient/plaintiff's treating physician without the patient's consent.

The circuit court issued its order on June 23, 2000, finding that the defense should be allowed to retain Dr. Cloud as a defense

expert, but that certain restrictions would apply to his testimony, including the following:

The defense may not discuss Lise Kraemer's care and treatment with Dr. Cloud;

1. If the plaintiffs call Dr. Cloud as a witness to testify at trial, the defense will not cross-examine Dr. Cloud in relation to his care and treatment of Lise Kraemer except based on information obtained through formal discovery; and

2. If the plaintiffs choose not to call Dr. Cloud as a witness, the defense will agree not to discuss the fact that Dr. Cloud performed any procedure on Lise Kraemer.

In addition, the circuit court's order also specifically permitted the defense to meet with Dr. Cloud without the Kraemers's attorney being present. Before any such meeting took place, the Kraemers filed the instant Petition for Writ of Certiorari on July 11, 2000.

*Standard of Review*

A writ of certiorari is extraordinary relief, and we will grant it only when there is a lack of jurisdiction, an act in excess of jurisdiction on the face of the record, or the proceedings are erroneous on the face of the record. *Cooper Communities, Inc. v. Benton County Circuit Court*, 336 Ark. 136, 984 S.W.2d 429 (1999). Unlike a writ of prohibition, the writ of certiorari can address actions already taken by the lower court. *Oliver v. Arkansas Professional Bail Bonds*, 340 Ark. 681, 13 S.W.3d 156 (2000). In determining its application we will not look beyond the face of the record to ascertain the actual merits of a controversy, or to control discretion, or to review a finding of facts, or to reverse a trial court's discretionary authority. *Juvenile H. v. Crabtree*, 310 Ark. 208, 833 S.W.2d 766 (1992). A writ of certiorari lies only where it is apparent on the face of the record that there has been a plain, manifest, clear, and gross abuse of discretion, and there is no other adequate remedy. *Hanley v. Arkansas State Claims Comm'n*, 333 Ark. 159, 970 S.W.2d 198 (1998). These principles apply when a petitioner claims that the lower court did not have jurisdiction to hear a claim or to issue a particular type of remedy. *Id.*

*Rule 503*

In their petition, the Kraemers argue that Ark. R. Evid. 503(d)(3)(B) prohibits the defense from "any informal, ex parte contact or communication with the patient's physician." They contend that by granting the defense's motion to make Dr. Cloud a defense witness, the trial court exceeded its authority in violation of Rule 503. The Kraemers argue that the rule specifically prohibits the court to allow the defense to communicate with Dr. Cloud *ex parte* without the Kraemers' consent. The Kraemers specifically note that the Arkansas courts have not addressed this issue, but that the federal district courts in Arkansas and the Eighth Circuit Court of Appeals have interpreted Arkansas's Rule 503 and Ark. R. Civ. P. 35 to prohibit these particular *ex parte* communications. The Kraemers also aver that the rules contain no language to support the defense's theory that once a physician is deposed, any party may communicate *ex parte* with the doctor. Finally, the Kraemers argue that if the defense's reading of the rule is adopted, the rule can always be circumvented merely by taking the deposition of any of the plaintiff's doctors under the guise of using the information in defense of the claim, and then the defense can contact that physician *ex parte* thereafter.

The defense responds that the Writ of Certiorari is inappropriate because the plaintiffs could have this issue addressed on appeal should they not prevail in the suit. The defense argues that because Dr. Cloud had been deposed, no communications from Lise Kraemer remain "confidential." Hence, the defense should not be prevented from speaking with the doctor independently. Finally, the defense notes that treating physicians may provide expert testimony regardless of whether it is helpful to the patient, and Rule 503 should not be used to prevent this testimony.

▮▮▮ At issue in this case is whether the defense may question one of Lise Kraemer's treating physicians without the plaintiff's attorney being present at the interview. The main focus of this inquiry is Rule 503 of the Arkansas Rules of Evidence, which details the physician–patient privilege and connected rules. The "General Rule of Privilege" states:

> A patient has a privilege to refuse to disclose and to prevent any other person from disclosing his medical records or confidential

communications made for the purpose of diagnosis or treatment of his physical, mental or emotional condition, including alcohol or drug addiction, among himself, physician or psychotherapist, and persons who are participating in the diagnosis or treatment under the direction of the physician or psychotherapist, including members of the patient's family.

Ark. R. Evid. 503(b). The privilege may be claimed by the patient, his guardian or conservator, or the personal representative of a deceased patient, and a patient has a privilege to prevent any other person from disclosing confidential communications made for the purpose of diagnosis or treatment of his mental or emotional condition. Ark. R. Evid. 503(c); *Randleman v. State*, 310 Ark. 411, 837 S.W.2d 449 (1992) (citing *Gruzen v. State*, 267 Ark. 380, 591 S.W.2d 342 (1979), cert. denied, 449 U.S. 852, 101 S.Ct. 144, 66 L.Ed. 2d 64 (1980), 459 U.S. 1020, 103 S.Ct. 386, 74 L.Ed. 2d 517 (1982). But Rule 503(b) does not grant a privilege to "any information," only "communications" between the patient and doctor, and confidential ones at that. *Baker v. State*, 276 Ark. 193, 637 S.W.2d 522 (1982). A communication is confidential if it is "not intended to be disclosed to third persons, except persons present to further the interest of the patient in the consultation, examination, or interview, persons reasonably necessary for the transmission of the communication, or persons who are participating in the diagnosis and treatment under the direction of the physician or psychotherapist, including members of the patient's family." Ark. R. Evid. 503(a)(4). In addition, a claim of privilege is not defeated by a disclosure which was compelled erroneously or made without an opportunity to claim the privilege. Ark. R. Evid. 511.

■ Section (d) of Rule 503 states the Exceptions to the general privilege rule. Subsections (3)(A) and (B) are specifically pertinent and state:

(3) *Condition and element of claim or defense.*

A. There is no privilege under this rule as to medical records or communications relevant to an issue of the physical, mental, or emotional condition of the patient in any proceeding in which he or she relies upon the condition as an element of his or her claim or defense, or, after the patient's death, in any proceeding in which any party relies upon the condition as an element of his or her claim or defense.

B. *Any informal, ex parte contact or communication with the patient's physician or psychotherapist is prohibited, unless the patient expressly consents. The patient shall not be required, by order of court or otherwise,* to authorize any communication with the physician or psychotherapist other than (i) the furnishing of medical records, and (ii) communications in the context of formal discovery procedures. (Emphasis added.)

By Per Curiam in 1990, this court enacted the prior version of this provision. *See In Re Changes to Rules of Civil Procedure*, 304 Ark. 742, 799 S.W.2d 811 (1990). The prior language of this section of Rule 503 stated:

(3) *Condition an element of claim or defense.* There is no privilege under this rule as to medical records or communications relevant to an issue of the physical, mental or emotional condition of the patient in any proceeding in which he relies upon the condition as an element of his claim or defense, or, after the patient's death, in any proceeding in which any party relies upon the condition as an element of his claim or defense; provided, however, a patient shall not be required, by order of court or otherwise, to authorize any communication with any physician or psychotherapist other than (A) the furnishing of medical records, (B) communications in the context of formal discovery procedures, or (C) informal conference in the presence of the party's attorney.

*Id.*, 304 Ark. at 744.

After the promulgation of this version of the rule, two federal district courts in Arkansas and the Eighth Circuit Court of Appeals had an opportunity to review and discuss this issue in two federal cases originating in Arkansas.[1] First, Judge Henry Woods in the Eastern District of Arkansas, Western Division, addressed the newly enacted provision in *Harlan v. Lewis*, 141 F.R.D. 107 (1992). *Harlan* involved a medical malpractice claim in which the plaintiffs alleged permanent damages to an infant allegedly due to the defendant

---

[1] This section of Rule 503 has not been interpreted by the Arkansas courts until now. As noted in *Harlan*, this court has touched on the general applicability of Rule 503 in *Duncan v. Cole*, 302 Ark. 60, 786 S.W.2d 587 (1990) and *Goodwin v. Harrison*, 300 Ark. 474, 780 S.W.2d 518 (1989). While the *Goodwin* court allowed a plaintiff's former treating physician to give expert opinion for a defendant doctor in a medical malpractice case so long as the physician--patient privilege was not breached, these cases were decided before section (d) was added to Rule 503 in the 1990 Per Curiam, which went into effect in 1991. And, in fact, the *Goodwin* court specifically noted that the issue of *ex parte* communications with the treating physician was not before that court. *See Goodwin*, 300 Ark. at 484.

physician's failure to check the results of a mandatory blood screen. In the case, the plaintiffs sought to prohibit the defense attorneys from contacting the child's non-party treating physicians and speaking to them *ex parte* (out of the presence of the plaintiff's attorneys) and informally (without the patient's authorization or consent). Judge Woods first discussed the fact that privileges arise statutorily, requiring the federal court to look to state law for authority.[2]

In *Harlan*, the defense contended, much as does the defense in the instant matter, that by filing a medical malpractice suit, the plaintiffs waived any right to control release of confidential information confided to, or discovered by, any treating physician. Judge Woods found, however, that "even though the privilege is partially waived through the filing of a lawsuit, Arkansas citizens retain some control over the manner in which information concerning their medical records and treatment is released." *Harlan*, 141 F.R.D. at 111. Judge Woods determined that while all relevant medical information is discoverable, the information can only be discovered by utilizing formal discovery tools consistent with Rule 503, and that the plaintiff maintains control over how that information is revealed. Ultimately, Judge Woods determined that the defense could not conduct *ex parte* interviews with a plaintiff's non-party treating physicians without the consent of the plaintiff or the presence of the plaintiff's attorney.

Interestingly, Judge Woods noted in the opinion that the defense in *Harlan* had designated treating physicians as "defense experts." While Judge Woods did not forbid such use of treating physicians, he did state:

> The defendant will not be permitted to circumvent the clear intent of the Arkansas rules relating to privilege by this disingenuous design. The Court has seriously considered barring these treating physician/defense experts from testifying at all in light of defense counsel's blatant refusal to acknowledge, much less comply with, Rules 503 and 35 and his improper attempts to influence testimony. (Citations omitted.) However, such a sanction would effectively eviscerate Dr. Lewis's ability to present a defense. Therefore, the defendant will be permitted to elicit expert opinions from treating physicians, but defense counsel may not meet with treating

---

[2] As the district court notes, generally federal courts will not follow state rules of evidence; however, questions involving privilege are governed by state law.

> physician "experts" outside the presence of the plaintiff's attorney, unless the plaintiffs so authorize. ... Furthermore, if the defendant intends to use treating physicians as expert witnesses, defense counsel must turn over to plaintiffs' counsel all notes, records, transcripts and recordings of ex parte interviews with those treating physicians which have occurred since April 1, 1991, the effective date of the amendment to Rule 503.

*Harlan*, 141 F.R.D. at 114.

Following *Harlan*, Judge Franklin Waters in the United States District Court for the Western District of Arkansas, Harrison Division, decided *King v. Ahrens*, 798 F.Supp. 1371 (1992), to the contrary. In *King*, Judge Waters addressed Judge Woods's holding, and determined that the new provision under Rule 503 does not prevent the defense from conducting *ex parte* interviews with treating physicians. Judge Waters premised his decision on his view that the rule, if read as the plaintiffs suggested, would prohibit even the defendant physician from speaking to his own attorneys.

The following year, the Eighth Circuit Court of Appeals resolved the debate in *Harlan v. Lewis*, 982 F.2d 1255 (8th Cir. 1993) cert. denied, *Hall v. Harlan*, 510 U.S. 828, 114 S.Ct. 94, 126 L.Ed.2d 61 (1993), the appeal from the above-cited *Harlan* district court decision. In the *Harlan* appeal, the Eighth Circuit addressed the underlying decisions by Judge Woods and Waters, and adopted Judge Woods's approach in the underlying *Harlan* decision. In doing so, the Eighth Circuit determined that "the issue before us concerns not the scope of the privilege but the manner of disclosure required under the Arkansas rules." *Harlan*, 982 F.2d at 1263. The Eighth Circuit focused on the specific language of the rule and the Reporter's Note accompanying the amendment to the rule, and stated:

> Both Rule 503(d)(3) and Arkansas Rule of Civil Procedure 35 provide that a party may not be required by order of court or otherwise to authorize "any communication" with his physician other than the furnishing of medical records and communications in the context of formal discovery procedures. "Any communication" is an inclusive term. Where the rule specifically prescribes the manner of disclosure to which a patient must consent, we cannot read the plain language of the rules to permit disclosure in ex parte interviews. The strict requirements of consent are antithetical to the authorization of non-consensual ex parte inter-

views. Furthermore, when the Arkansas Supreme Court adopted the 1991 version of these rules, it also adopted an amendment to the Reporter's Note accompanying Arkansas Rule of Civil Procedure 35 which states:

> New subdivision (c) of this rule sets out the circumstances under which a party must authorize release of his medical records to another party. It also makes plain that a party may not be required to allow an adversary to communicate with the party's physician or psychotherapist outside the formal discovery process. This safeguard is deemed necessary to protect the confidential relationship between a party and his physician or psychotherapist.

*Id.*

The Eighth Circuit also addressed two additional issues of concern in this case. First, the Eighth Circuit noted that "Rule 503(d)(3) removes the privilege only from communications or records concerning a condition that is an element of a claim or defense; information not relating to such a condition is still privileged." The court noted that if the rules did not strictly prescribe the manner in which information could be released, doctors would be left to their own devices to determine what information could be revealed. As the privilege is one only the patient can claim, and the rules only require disclosure if the condition is an element of a claim or defense, the court rejected the contention that the filing of a lawsuit operates as an absolute waiver. Second, the Eighth Circuit held that Rule 503(d)(3) would not interfere with a defendant physician's relationship with his defense counsel or his ability to present a defense in his case. The court stated:

> When a doctor is a party to the action, four different considerations apply: (1) the party doctor has a right to be represented by counsel; (2) this right is meaningless without the ability to converse freely with counsel about the representation; (3) when the issue is malpractice, the party physician must be able to consult with counsel about the treatment at issue and this entails disclosure of the details of that treatment; and (4) the law of privilege applying to medical witnesses should not render the party physician powerless to prepare a defense. Arkansas case law reenforces our belief that the Rule 503(d)(3) language is intended to apply only to treating physicians, other than the defendant physician, who may

be called to testify in the case. *See, e.g., Duncan v. Cole,* 786 S.W.2d at 587; *Goodwin v. Harrison,* 300 Ark. 474, 780 S.W.2d 518 (1989).

*Harlan,* 982 F.2d at 1264-1265.

While the federal cases cited are not binding on us, we find their reasoning sound and persuasive. In fact, this court specifically cited to the Eighth Circuit's opinion in *Harlan* as its reason to amend Rule 503(d)(3) in our 1998 Per Curiam. The rule's language in (d)(3)(B) is very specific. As noted above, it states that "any informal, ex parte contact or communication with the patient's physician or psychotherapist is prohibited, unless the patient expressly consents." Furthermore, the patient shall not be "required, by order of the court or otherwise, to authorize any communication...." In other words, in compliance with the privilege, the rule allows the control of the information disseminated to remain with the patient.

 ██ We hold, therefore, that Rule 503(d)(B) by its plain language forbids *ex parte* communication with the patient's physician in the absence of the patient's consent. Further, because the Rule also denies the court the authority to compel the patient's consent, we also hold that the trial court erred in authorizing *ex parte* communication between Dr. Cloud and defense counsel without the plaintiff's consent.[3] A writ of certiorari lies only where it is apparent on the face of the record that there has been a plain, manifest, clear, and gross abuse of discretion, and there is no other adequate remedy. *Hanley, supra.* Here it is apparent from the pleadings and the court's order that the court's order was inconsistent with the express language of the rule. Moreover, we are persuaded that an appeal of an adverse decision would not be an adequate remedy under the circumstances.

Writ of Certiorari granted.

---

[3] We note that our holding does not forbid the use of Dr. Cloud as a defense expert.