2012 Ark. 108

Ketan BULSARA, Individually and as Administrator of the Estate of Simi Ketan Bulsara, deceased, and on behalf of the wrongful-death beneficiaries of Simi Ketan Bulsara, Appellant

v.

Julia Mortimer WATKINS, M.D., Appellee.

No. 11–230.

Supreme Court of Arkansas.

March 8, 2012.

Rehearing Denied May 3, 2012.

Melody H. Piazza, Deborah Truby Riordan and Brian Gene Brooks, Little Rock, for appellant.

Brett David Watson, Searcy, J. Phillip Malcom, Emily Sneddon and Nicole Hartz, Little Rock, for appellee.

PAUL E. DANIELSON, Justice.

Appellant Ketan Bulsara, Individually and as Administrator of the Estate of Simi Ketan Bulsara, deceased, and on behalf of the wrongful-death beneficiaries of Simi Ketan Bulsara, appeals from the judgment of the circuit court entered in favor of appellee Dr. Julia Watkins. Dr. Bulsara originally appealed to the court of appeals, and that court affirmed the judgment. *See Bulsara v. Watkins,* 2009 Ark. App. 409, 319 S.W.3d 274. He then petitioned this court for review, which we granted; however, we dismissed the appeal without prejudice for lack of a final order. *See Bulsara v. Watkins,* 2010 Ark. 453, 2010 WL 4680270. Dr. Bulsara now appeals from the final order entered by the circuit court and raises three points on appeal. Specifically, he claims that the circuit court erred in denying his motion for new trial: (1) where defense counsel engaged in ex parte contact with a nonparty, treating physician; (2) where a defense expert refused to disclose the information reviewed in his investigation; and (3) where defense counsel improperly acquired confidential information from an expert who previously consulted with Dr. Bulsara and his former counsel. We reverse and remand.

The facts, in brief, are these. On April 19, 2004, Dr. Bulsara, a neurosurgeon by occupation, filed a medical-malpractice and wrongful-death action against Dr. Watkins and St. Vincent Doctor's Hospital, stemming from the stillbirth of his child, Baby Simi. The complaint was later amended to include Arkansas Women's Center, P.A., as a defendant, but it and St. Vincent Doctor's Hospital were later dismissed. The matter was ultimately tried by a jury, who returned a judgment in favor of Dr. Watkins, which was filed on November 3, 2006. On November 17, 2006, Dr. Bulsara filed a motion for new trial, in which he asserted that (1) the circuit court should have declared a mistrial after the defense's expert referred to Dr. Bulsara's settlement with a third party; (2) the defense's expert witness, Dr. McKelvey, should have been disqualified as an expert; (3) Dr. Watkins's counsel, Phil Malcom, should have been disqualified for misconduct relating to his contact with Dr. Rosey Seguin, Mrs. Bulsara's treating physician and Dr. Watkins's partner at Arkansas Women's Center, without Mrs. Bulsara's consent; (4) Dr. Watkins's counsel improperly impeached Dr. Bulsara's expert witness during closing argument; (5) Dr. Watkins violated the circuit court's ruling on a motion in limine when she elicited certain testimony; (6) Dr. Watkins improperly impeached witnesses; and (7) the "empty chair"-defendant instruction prejudiced the jury. On November 22, 2006, the circuit court entered an order granting a motion by Dr. Watkins for an extension of time to respond to Dr. Bulsara's new-trial motion.

On November 28, 2006, Dr. Bulsara filed a motion to vacate or set aside judgment, which he based on the grounds set forth in his motion for new trial. Dr. Watkins responded to the motion, stating that the "alleged errors, mistakes, or miscarriages of justice" asserted by Dr. Bulsara had been previously ruled on by the circuit court and that no new law or facts were presented that would warrant vacating the jury's verdict based on the previous rulings. On December 15, 2006, the circuit court denied Dr. Bulsara's motion for new trial.

On January 9, 2007, Dr. Bulsara filed his notice of appeal; however, that same day, the circuit court entered its order denying Dr. Bulsara's motion to vacate or set aside. Accordingly, Dr. Bulsara filed an amended notice of appeal. As already noted, the matter was appealed to the court of appeals, which affirmed the judgment of the circuit court. We granted review, but then dismissed the appeal for lack of a final order. A final order was obtained, and Dr. Bulsara now appeals.

## I. *Dr. Watkins's Motions*

█ As an initial matter, we must decide two pending motions that were filed with this court and submitted with the case. In a motion to dismiss the appeal, Dr. Watkins asserts that at the time the subsequent notice of appeal was filed, following our dismissal and the circuit court's entry of a final order, there was no personal representative pursuing the action due to Dr. Bulsara's prior discharge as personal representative. For this reason, she contends, the notice of appeal was a nullity, and this court lacks jurisdiction to hear the instant appeal.

The exhibits attached to the motion reflect that on February 14, 2007, Dr. Bulsara petitioned the probate court to approve a settlement and authorize payment of attorney's fees ⌊4and expenses, and an order approving such was entered on February 16, 2007. On March 2, 2007, Dr. Bulsara filed a petition to authorize the final distribution of estate assets, and on March 9, 2007, the probate court entered an order approving the report of final distribution, discharging the administrator, and closing the administration of the estate.

In *Brewer v. Poole,* 362 Ark. 1, 207 S.W.3d 458 (2005), we observed that under Arkansas Code Annotated § 16–62–102(b), every cause of action for wrongful death shall be brought by and in the name of the personal representative, or, if there is no personal representative, then the action shall be brought by the heirs at law of the deceased person. In so noting, we held that, where the original complaint in the case failed to include all the heirs at law as parties to the suit, the original complaint was a nullity. *See Brewer,* 362 Ark. 1, 207 S.W.3d 458. Dr. Watkins relies on *Brewer* and other similar cases for her proposition that Dr. Bulsara's notice of appeal was a nullity. We believe, however, that Dr. Watkins's reliance is misplaced.

In *Bailey v. Rockafellow,* 57 Ark. 216, 21 S.W. 227 (1893), cited by Dr. Bulsara in his response to the motion, this court held that the discharge of an administrator, before judgment was rendered, was no bar to his prosecution of the action.[1] There, Bailey had been appointed administrator of the estate and, in that capacity, brought an action to foreclose a deed of trust and collect a note. During the pendency of the action, after filing a final settlement, he was discharged as the administrator. Notwithstanding his discharge, he prosecuted the action, ⌊5without objection. On appeal, the appellees challenged Bailey's prosecution of the action after his discharge, and this court held:

> The first question to be decided is raised by the contention of appellees to the effect that Bailey had no right to prosecute the action as administrator after his discharge. Regularly the action should have been revived in the name of the proper parties, but the court did not lose jurisdiction of it. The discharge

---

1. This court granted Dr. Bulsara permission to supplement his response to the motion with an order from the probate court, filed November 9, 2011, reopening the administration of the estate and reappointing Dr. Bulsara as administrator.

was no bar to the action. The defendants could have taken advantage of it by a supplemental answer in the nature of a plea in abatement. But they had a right to waive it, and permit the cause to be tried upon its merits, without revivor, and did so with notice of the fact, by a failure to plead it in any manner. *Spalding v. Wathen* [70 Ky. 659], 7 Bush 659 [ (1871) ]; Mansfield's Digest, secs. 5028, 5031.

57 Ark. at 218–19, 21 S.W. at 228.

In accord with *Bailey*, we hold that Dr. Bulsara's discharge as administrator did not bar his ability to obtain a final order or prosecute the instant appeal. There are, too, the facts that this is Dr. Watkins's first objection since the discharge was entered, and it was Dr. Watkins's failure to dismiss her cross-claim that required this court to dismiss Dr. Bulsara's prior appeal. We therefore deny Dr. Watkins's motion to dismiss the appeal.

Because we deny the motion to dismiss on the basis that Dr. Bulsara's discharge did not preclude him from obtaining a final order or pursuing the instant appeal, we need not consider the effect of an order by the probate court reopening the estate and reappointing Dr. Bulsara. Accordingly, Dr. Watkins's motion to set aside the probate court's order is moot.

## II. *Ex Parte Contact with Treating Physician*

For his first point on appeal, Dr. Bulsara argues that he is entitled to a new trial because Dr. Watkins's defense counsel, Phil Malcom, violated Arkansas Rule of Civil Procedure 35(c)(2) and Arkansas Rule of Evidence 503(d)(3)(B), which prohibit ex parte contact by an adverse party with a patient's nonparty, treating physician, when he consulted with Dr. Seguin regarding Mrs. Bulsara's case without consent. Dr. Bulsara contends that because Dr. Seguin was a treating physician not named as a party to the lawsuit, Malcom violated the rules when he precluded Dr. Bulsara from speaking with her without Malcom present and objected, on Dr. Seguin's behalf, to Dr. Bulsara's discovery request. Dr. Bulsara asserts that Malcom cannot circumvent either the rules prohibiting ex parte contact or the physician-patient privilege simply by representing both Dr. Seguin and Dr. Watkins. He contends that the proper sanction for Malcom's actions is a new trial from which Malcom is disqualified, due to Malcom's unfettered access to Dr. Seguin and her confidential communications, all without consent.

Dr. Watkins counters that she and Dr. Seguin, as well as the clinic at which they were partners, had the right to retain counsel of their choice. She states that Ark. R. Civ. P. 35(c)(2) and Ark. R. Evid. 503(d)(3)(B) are discovery rules designed to protect patient privacy and do not limit the rights of doctors and clinics to select their attorneys. She avers further that Dr. Bulsara has failed to present any proof of prejudice. However, Dr. Bulsara asserts that he did suffer prejudice, specifically, that Malcom restricted Dr. Bulsara's communication with a treating physician, enjoyed improper access to confidential information, and "poisoned the well" with respect to Dr. Seguin.

This court has held that a decision on whether to grant or deny a motion for new trial lies within the sound discretion of the circuit court. *See Dodson v. Allstate Ins. Co.*, 345 Ark. 430, 47 S.W.3d 866 (2001). We will reverse a circuit court's order granting a motion for a new trial only if there is a manifest abuse of discretion. *See id.* A circuit court's factual determination on a motion for a new trial will not be reversed unless clearly erroneous. *See id.*

Rule 503 (d)(3)(B) of the Arkansas Rules of Evidence provides, in pertinent part, that "[a]ny informal, ex parte contact or communication with the patient's physician or psychotherapist is prohibited, unless the patient expressly consents." Ark. R. Evid. 503(d)(3)(B) (2011). This court has previously held that the rule "by its plain language forbids ex parte communication with the patient's physician in the absence of the patient's consent." *Kraemer v. Patterson*, 342 Ark. 481, 492, 29 S.W.3d 684, 690 (2000). Similarly, Ark. R. Civ. P. 35(c)(2) (2011) provides, in pertinent part, that "[a]ny informal, ex parte contact or communication between a party or his or her attorney and the physician or psychotherapist of any other party is prohibited, unless the party treated, diagnosed, or examined by the physician or psychotherapist expressly consents." Ark. R. Civ. P. 35(c)(2) (2011). At issue here is whether Malcom's representation of Dr. Seguin and Dr. Watkins resulted in a violation of these rules. We hold that it did.

According to an affidavit of Dr. Seguin submitted to the circuit court, she and Dr. Watkins discussed the Bulsara case and decided they "needed to obtain the services of an attorney, because we were fearful that claims or a lawsuit would be filed against us over the death of his baby." She stated that she and Dr. Watkins "agreed that we wanted Phil Malcom to represent each of us and our group, Arkansas Women's Center, with regard to claims or litigation that could be pursued against us by Dr. and Mrs. Bulsara over the death of their baby." She stated that Dr. Watkins later relayed to her that Malcom "had accepted the request that she and I had made to have him represent each of us as well as Arkansas Women's Center with regard to [the possible] claims

or litigation." Notably, she also stated that she "related information to [Malcom]" that she "felt he needed to know," that he requested her to provide information to him for use in his representation of her, and that she "provided written information to him" for use in his representation of her with regard to any claims or lawsuits filed in the Bulsara matter. It is this information with which Dr. Bulsara was concerned that serves as the basis for his arguments on appeal.

We in no way dispute Dr. Watkins's claim that a physician can seek legal counsel on issues of concern, just as that holds true for any other person. And, Dr. Seguin was free to seek counsel from Malcom. We wish to make clear, however, that she was still bound by her physician-patient privilege with Mrs. Bulsara.[2] It is once the instant lawsuit was filed and failed to name Dr. Seguin, that a conflict in representation arose for Malcom, who also represented Dr. Watkins, a named defendant, or party, that ran afoul of our rules set forth above.

We find persuasive the reasoning of the Illinois Appellate Court in *Baylaender v. Method*, 230 Ill.App.3d 610, 171 Ill.Dec. 797, 594 N.E.2d 1317 (1992), cited to this court by Dr. Bulsara. In *Baylaender*, it was alleged that the decedent, Maria, died as a result of Dr. Method's failure to diagnose her breast cancer. Prior to trial, Baylaender moved in limine to bar the testimony of Dr. Southwick for the defense. *See Baylaender*, 230 Ill.App.3d 610, 171 Ill.Dec. 797, 594 N.E.2d 1317. Dr. Southwick was a physician who treated Maria subsequent to Dr. Method's alleged negligence. *See id.* Baylaender contended that Dr. Southwick violated the physician-patient privilege when he discussed Maria with an attorney assigned to repre-

---

**2.** Indeed, any communications between Dr. Seguin and Malcom were protected under the attorney-client privilege. *See* Ark. R. Evid. 502 (2011); Ark. R. Prof'l Conduct 1.6 (2011).

sent him by his malpractice insurance carrier although he was not sued. *See id.* The same attorney was subsequently assigned by the carrier to represent the defendant, Dr. Method. *See id.* The circuit court denied the motion, and Baylaender appealed. *See id.*

On appeal, Baylaender argued that Dr. Southwick should have been barred from testifying because he violated Maria's physician-patient privilege when he, without her consent and prior to any suit being filed, discussed her care with an attorney appointed by his insurance carrier to represent him. *See id.* The violation was exacerbated, Baylaender claimed, when after the suit was filed, the insurer assigned another attorney to represent Dr. Southwick, and Dr. Southwick's original attorney was assigned by the same insurance carrier to represent the defendant. *See id.*

The appeals court agreed with Baylaender and found that the transfer of Dr. Southwick's attorney to represent the defendant made it impossible to build "a 'Chinese wall' between attorneys to prevent information sharing." *Id.* at 1326. Noting that such separation would be difficult with two attorneys and the same insurer, the court found that it was "absolutely impossible" where the same attorney was to represent the defendant after having represented the treating physician and taking with him any confidential information the treating physician may have revealed. *Id.* The court concluded that the transfer of counsel "fatally compromised" the plaintiff's rights to protect her medical secrets from disclosure to the defendant. *Id.* at 1327.

Likewise, Mrs. Bulsara's right to protect her confidential communications with Dr. Seguin was fatally compromised when Malcom continued his representation of Dr. Watkins, after the filing of the complaint, having taken with him any confidential information relayed to him by Dr. Seguin. It was Malcom's "taking" of this information, as counsel for a defendant-physician, that violated Ark. R. Evid. 503 and Ark. R. Civ. P. 35, and it was the "taking" of this information that served as the basis on which he should have removed himself from the representation.

■ While Malcom attempts to justify his communications with Dr. Seguin by virtue of the fact that he also represented Dr. Seguin's practice, Arkansas Women's Center, P.A., also a defendant, we are not so swayed. The policy behind the physician-patient privilege is to encourage patients to communicate openly with their physicians and to prevent physicians from revealing the infirmities of their patients. *See Arkansas State Med. Bd. v. Leonard,* 267 Ark. 61, 590 S.W.2d 849 (1979). Here, Dr. Seguin was Mrs. Bulsara's treating physician, and Rule 503(d)(3)(B) explicitly forbade *any* communication with her, other than the furnishing of medical records and communications in the context of formal discovery, unless Mrs. Bulsara consented. *See also* Ark. R. Civ. P. 35(c)(2). "'Any communication'" is an inclusive term. *Harlan v. Lewis,* 982 F.2d 1255, 1263 (8th Cir.1993). We therefore reject Malcom's attempted justification, because like our federal district court, we will not permit the clear intent of our rules to be so circumvented. *See Harlan v. Lewis,* 141 F.R.D. 107 (E.D.Ark.1992).[3]

■ Under Ark. R. Civ. P. 59(a)(1),

---

**3.** While Dr. Watkins relies on this court's decision in *Courteau v. St. Paul Fire & Marine Insurance Co.,* 307 Ark. 513, 821 S.W.2d 45 (1991), for her proposition that Malcom's communications were permissible in light of his representation of the practice, we find *Courteau* inapposite. There, the attorney-client privilege was at issue, rather than the

[a] new trial may be granted to all or any of the parties and on all or part of the claim on the application of the party aggrieved, for any of the following grounds materially affecting the substantial rights of such party:

(1) any irregularity in the proceedings or any order of court or abuse of discretion by which the party was prevented from having a fair trial.

A party moving for new trial on this basis must show that his or her rights have been materially affected by demonstrating a reasonable possibility of prejudice. *See Winkler v. Bethell*, 362 Ark. 614, 210 S.W.3d 117 (2005). It is clear to this court that Dr. Bulsara demonstrated a reasonable possibility of prejudice, in light of Malcom's continued representation of Dr. Watkins after the filing of Dr. Bulsara's lawsuit while in possession of confidential information and in contravention of our rules. Accordingly, we reverse the circuit court's denial of Dr. Bulsara's motion for new trial and remand for a new trial. Because we reverse and remand on this issue, we need not address Dr. Bulsara's remaining points on appeal.

Reversed and remanded. Motion to dismiss denied; motion to set aside moot.

BROWN, J., concurs in part and dissents in part.

HANNAH, C.J., and GUNTER and BAKER, JJ., concur in part and dissent in part.

ROBERT L. BROWN, concurring in part and dissenting in part.

I have determined that though I agree a violation of Arkansas Rule of Civil Procedure 35 and Arkansas Rule of Evidence 503 occurred after suit was filed and Phillip Malcom continued to represent Dr. Seguin and talk with her without the Bulsaras' permission, I do not believe disqualification of Malcom from representing both doctors is an appropriate sanction.

I am led to this conclusion by the fact that in cases where Arkansas courts have considered violations of Arkansas Rule of Civil Procedure 35 and Arkansas Rule of Evidence 503, the remedy has been to limit or exclude the testimony of the treating physician on behalf of the defense and to impose monetary sanctions on the defense attorney. *See Kraemer v. Patterson*, 342 Ark. 481, 29 S.W.3d 684 (2000); *See Harlan v. Lewis*, 141 F.R.D. 107 (E.D.Ark. 1992). This is true even where it was clear that the defense attorney engaged in impermissible and unethical conduct. *See Harlan*, 141 F.R.D. at 113.

In *Harlan*, the Arkansas district court explained that the purpose behind Rules 35 and 503 is to permit patients to retain some control over the manner in which information concerning their medical records and treatment is released.[1] *Harlan*, 141 F.R.D. at 111. The Supreme Court of North Carolina has taken a similar view when it stated that the physician-patient privilege and the rule prohibiting ex parte contact differ in function as well as pur-

physician-patient privilege at issue in the instant case.

1. It is important to note that we adopted the current version of Arkansas Rule of Civil Procedure 35 and Arkansas Rule of Evidence 503 in light of the decision in *Harlan. See* Ark. R. Civ. P. 35 rprts. nn. (1998 amend.) ("Consistent with the result reached in *Harlan*, the first sentence of paragraph (2) provides that a

party or his or her attorney cannot interview or otherwise informally contact another party's treating physician or psychotherapist without that party's consent. This new provision reflects the intent of the original version of the rule, i.e., to limit the communications with a party's physician or psychotherapist to the formal discovery process.").

pose. *See Crist v. Moffatt*, 326 N.C. 326, 389 S.E.2d 41 (1990). In *Crist*, the court explained that "[t]he statutory privilege determines whether certain information may be disclosed. In contrast, the prohibition against unauthorized *ex parte* contact regulates only how defense counsel may obtain information from a plaintiff's treating physician, i.e., it affects defense counsel's methods, not the substance of what is discoverable." *Id.* at 45 (quoting *Manion v. N.P.W. Medical Center of N.E. PA., Inc.*, 676 F.Supp. 585 (M.D.Pa.1987)).

This view places Arkansas among an enlightened "emerging consensus [of states adhering] to the position that defense counsel is limited to the formal methods of discovery enumerated by the jurisdiction's rules of civil procedure, absent the patient's express consent to counsel's *ex parte* contact with her treating physician." *Harlan*, 141 F.R.D. at 111 (quoting *Crist*, 389 S.E.2d at 45). This view, according to the federal district court, "strikes an appropriate balance between the parties' ability to obtain all relevant information and the patient's right to have irrelevant medical information remain confidential." *Id.* This is so because "[t]here is absolutely no relevant medical information which can be withheld under Arkansas" rules and "[a]ll relevant medical information is fully discoverable." *Id.* Therefore, even though the physician-patient privilege is waived through the filing of a lawsuit, "the confidential nature of the physician-patient relationship remains, even though medical information is then subject to discovery." *Id.* (quoting *Crist*, 389 S.E.2d at 46).

But again, in the above-cited cases, disqualification of counsel for the defendant physician was not the sanction imposed where a violation of a rule prohibiting ex parte contact, such as Rules 35 and 503, occurred. In *Crist*, the sanction affirmed by the North Carolina Supreme Court was to prohibit the defense counsel from further ex parte interviews with the plaintiff's nonparty treating physician without the plaintiff's express consent. *Crist*, 389 S.E.2d at 47. The court in *Crist* also affirmed the trial court's requirement that defense counsel fully disclose the substance of all private conversations between defense counsel and plaintiff's nonparty treating physicians because this remedy was "designed to enable plaintiff to prepare for evidence that might be offered at trial as a result of the *ex parte* discovery." *Id.* at 48.

In *Harlan*, the federal district court indicated that it "seriously considered barring these treating physician/defense experts from testifying at all in light of defense counsel's blatant refusal to acknowledge, much less comply with, Rules 503 and 35 and his improper attempts to influence testimony." *Harlan*, 141 F.R.D. at 113. However, the court noted that this would severely limit the defendant doctor's ability to present a defense. *Id.* at 114. Accordingly, the district court permitted the defendant to elicit expert opinions from the treating physicians, but prohibited defense counsel from meeting with the treating physician experts outside the presence of the plaintiffs' attorney without the plaintiffs' express consent. *Id.* The court further ordered the defense counsel to turn over to the plaintiffs' counsel all notes, records, transcripts, and recordings of the ex parte interviews with the treating physicians if the defendant intended to use those treating physicians as expert witnesses. *Id.*

The *Harlan* court, as a final sanction, imposed monetary sanctions on defense counsel for violation of the Model Rules of Professional Conduct and the rules prohibiting ex parte contact. *Id.* at 113. The

defense attorney in *Harlan* had made improper and unethical comments to the treating physician during the ex parte interviews in that he told the treating physician that he could be called as a witness; that he could be sued by the plaintiffs; and that if the treating physician did not testify for the plaintiffs, the suit would probably not be successful. *Id.* The district court concluded that by suggesting to the treating physician that he not testify, the defendant's lawyer violated Rule 3.4 of the Model Rules of Professional Conduct, which prohibit a lawyer from obstructing another party's access to evidence or from counseling a third party to conceal information having "possible evidentiary value." *Id.* The court found that even if the Arkansas Rules permitted ex parte interviews with treating physicians, this conduct by defense counsel would be impermissible and unethical. *Id.* Accordingly, the district court sanctioned the defense attorney $2500, "an amount the Court consider[ed] paltry, in light of the conduct." *Id.* The Eighth Circuit affirmed the decision of the district court and its imposition of sanctions. *Harlan v. Lewis*, 982 F.2d 1255 (8th Cir.1993).

In *Kraemer v. Patterson*, the circuit court entered an order permitting the defense to retain the plaintiff's treating physician as a defense expert. *Kraemer*, 342 Ark. at 484, 29 S.W.3d at 686. The circuit court also specifically permitted the defense to meet with the treating physician without the plaintiff's attorney being present. *Id.* at 485, 29 S.W.3d at 686. Before any meeting took place, however, the plaintiff filed a petition for writ of certiorari with this court. *Id.* This court held that Rule 503(d)(3)(B) by its plain language forbids ex parte communication with the patient's physician in the absence of the patient's consent. *Id.* at 492, 29 S.W.3d at 690. This court also held that the circuit court erred in authorizing ex parte contact between the treating physician and the defense counsel without the plaintiff's consent. *Id.* We noted specifically, however, that the holding did not forbid the use of the treating physician as a defense expert. *Id.* at n. 3.

Then there is the Illinois Court of Appeals' decision in *Baylaender v. Method*, 230 Ill.App.3d 610, 171 Ill.Dec. 797, 594 N.E.2d 1317 (1992), which is cited by the majority and Dr. Bulsara. The *Baylaender* case does not support the majority's sanction of disqualification of Malcom as counsel for Dr. Watkins. In *Baylaender*, which is factually similar to the instant case in that counsel for the defendant doctor also represented the treating physician, the "only feasible remedy" was to bar the treating physician's testimony for the defense. *Baylaender*, 594 N.E.2d at 1327. The court found such a sanction to be appropriate "to countervail the prejudice to the plaintiff resulting from the breach of the fiducial and confidential relation between [the treating physician] and the plaintiff which was precipitated in this case." *Id.* The *Baylaender* decision did not mandate disqualification of defense counsel.

In the instant case, we are presented with different facts than have been considered by this court before due to the fact that Malcom was retained to represent both Dr. Watkins (the defendant) and Dr. Seguin (a treating physician) prior to the lawsuit being filed. Nevertheless, disqualifying Malcom from representing Dr. Watkins for purposes of a new trial goes too far in my judgment. Even in the *Harlan* case, where the defense counsel engaged in what the federal district court called "impermissible and unethical" conduct, the remedy was to prohibit defense counsel from meeting with the treating physicians without the plaintiff's consent; to order defense counsel to turn over all notes and

records of the ex parte communications with the treating physicians, if the defense was going to call those treating physicians as expert witnesses; and to impose monetary sanctions against the defense attorney for his "blatant refusal to acknowledge, much less comply with, Rules 503 and 35 and his improper attempts to influence testimony." *Harlan*, 141 F.R.D. at 113.

The real issue in the instant case appears to be that Malcom violated Arkansas Rules of Professional Conduct by continuing to represent both doctors after the lawsuit was filed. For example, it seems that by representing both Dr. Watkins and Dr. Seguin, Malcom was violating Rules 1.7 and 1.9 of the Arkansas Rules of Professional Conduct. Rule 1.7, entitled "Conflict of Interest: Current Clients," provides that a lawyer shall not represent a client if the representation involves a concurrent conflict of interest where the representation "will be *materially limited* by the lawyer's responsibilities to another client, a former client or a third person." Ark. R. Prof'l Conduct 1.7(a)(2) (2011) (emphasis added). Rule 1.9 reads that a "lawyer who has formerly represented a client in a matter shall not thereafter represent another person in the same or a substantially related matter in which that person's interests are *materially adverse* to the interests of the former client unless the former client gives informed consent, confirmed in writing." Ark. R. Prof'l Conduct 1.9(a) (2011) (emphasis added).

It appears that Malcom's representation of Dr. Watkins would be materially limited by his responsibilities to another client, Dr. Seguin, and vice-versa, in that it would be virtually impossible to keep information he learned through his representation of Dr. Seguin separate from his defense of Dr. Watkins. However, although Dr. Bulsara makes a general argument about conflict of interest, his argument is not really developed in this appeal. Dr. Bulsara simply makes conclusory statements, such as "[r]epresenting Dr. Seguin's interests directly conflicts with Mr. Malcom's representation of Dr. Watkins' interest," "Malcom simply could not represent both clients in this case," and "[w]hile Rule 1.7(b) allows some conflicts to be waived . . . [t]his conflict would surely be 'nonconsentable,'" without providing an explanation or support for these statements.

Additionally, Dr. Bulsara abandons his argument made below concerning Malcom's violation of another rule of professional conduct, Rule 3.4, which provides that a lawyer shall not "unlawfully obstruct another party's access to evidence." Ark. R. Prof'l Conduct 3.4(a). In his brief in support of his motion for withdrawal of counsel, Dr. Bulsara argued that because Malcom could not ethically represent a nonparty, treating physician and a defendant physician concurrently, his advising Dr. Seguin to refrain from speaking to Mrs. Bulsara obstructed Dr. Bulsara's access to relevant information and was a violation of Rule 3.4. This is similar to the argument made in *Harlan*, which the district court and the Eighth Circuit accepted. This court has made it clear that disqualification of counsel is a drastic measure to be imposed only where clearly required by the circumstances. *Craig v. Carrigo*, 340 Ark. 624, 12 S.W.3d 229 (2000). It is an available remedy to a circuit court "to protect and preserve the integrity of the attorney-client relationship." *Id.* at 633, 12 S.W.3d at 235 (quoting *Burnette v. Morgan*, 303 Ark. 150, 794 S.W.2d 145 (1990)). This court has recognized, however, that the Rules of Professional Conduct are applicable in disqualification proceedings. *Wilburn v. State*, 346 Ark. 137, 56 S.W.3d 365 (2001). Therefore, if Dr. Bulsara had fully developed or preserved his arguments on appeal that Malcom violated the rules of professional

conduct, then an argument in favor disqualification would be more plausible. However, Dr. Bulsara failed to develop, or even present, these arguments adequately on appeal.

In sum, I do not think that Rule 35 and Rule 503 relied on by the majority support the remedy of disqualification. At best, these rules and the cases interpreting them or similar rules, provide alternative ways to right the prejudice to the plaintiff by prohibiting the treating physician from testifying for the defense, by prohibiting ex parte contact between the defense and the treating physician, by forcing the defense to turn over to the plaintiff any notes or records resulting from the ex parte communication, and by imposing monetary sanctions for defense counsel's "blatant refusal to acknowledge, much less comply with, Rules 503 and 35 and his improper attempts to influence testimony."

Finally, although I disagree that Malcom should be disqualified as counsel for Dr. Watkins, I do agree that a new trial is warranted. It is clear to me that there has been a blatant violation of Rules 35 and 503. For example, Rule 35(c)(2) expressly prohibits ex parte communications between counsel for a party (Malcom, who represented Dr. Watkins) and a nonparty, treating physician (Dr. Seguin) unless the treated party (Mrs. Bulsara, who is a beneficiary of the estate) expressly consents. She did not. Rule 35(c)(2) speaks in terms of parties; therefore, a violation of this rule does not occur until a complaint has been filed and a lawsuit has begun. As evidenced by both Dr. Seguin's affidavit and letters written by Malcom on behalf of Dr. Seguin, it is undisputed that Malcom and Dr. Seguin remained in contact, and, in fact, he continued to represent Dr. Seguin, after the lawsuit was filed. Although it is not clear the exact information that was shared between Dr. Seguin and Malcom before or after the filing of the complaint, the rules cited above are clear that *any* communication between the attorney and the treating physician after the suit is filed is prohibited. Therefore, it does not matter what exactly was shared between the two because any communication after the filing of suit results in a violation of the rules.

At the time the lawsuit was filed, Malcom should have ceased all communication with Dr. Seguin and advised her to seek other counsel. His failure to do so, and, indeed, his continued representation of Dr. Seguin after the complaint was filed, while he remained counsel for Dr. Watkins, resulted in a violation of Rule 35(c)(2) and Rule 503. In cases such as these, it is exceedingly difficult to quantify prejudice. However, Dr. Bulsara has shown a reasonable possibility of prejudice by the simple fact that information was shared between Malcom and Dr. Seguin. Dr. Bulsara has demonstrated further prejudice in light of Malcom's refusal to permit Dr. Bulsara to communicate with Dr. Seguin, unless Malcom was present, essentially obstructing his access to information. Because Malcom effectively participated in an ongoing violation of Arkansas Rule of Civil Procedure 35(c)(2) and Arkansas Rule of Evidence 503, which resulted in prejudice to Dr. Bulsara, a new trial is warranted. Rather than prohibit Malcom from representing Dr. Watkins on remand, however, I would grant the alternative remedy sought by Dr. Bulsara, which is to require Malcom to turn over all notes, records, transcripts, and recordings of the ex parte interviews with Dr. Seguin. This sanction for the violation of the rules is appropriate in order to enable Dr. Bulsara "to prepare for evidence that might be offered at trial as a result of the *ex parte* discovery." *Crist,* 389 S.E.2d at 48.

Accordingly, I respectfully concur in part and dissent in part.

JIM GUNTER, Justice, concurring in part and dissenting in part.

Today the majority holds that appellant is entitled to a new trial based on allegedly improper communications between Dr. Seguin and her attorney, Phil Malcom. I cannot agree with the reasoning used by the majority in reaching this conclusion, nor do I believe that appellant demonstrated prejudice from any of these allegedly improper communications; therefore, I dissent in the decision to reverse and remand for a new trial. I concur, however, in the majority's disposition of the motion to dismiss and motion to set aside.

As explained by the majority, both Dr. Watkins and Dr. Seguin contacted Malcom almost immediately after the incident and retained him as counsel for themselves and Arkansas Women's Center in the event that litigation ensued. This was perfectly within their rights to protect themselves and the Center as potential defendants. *See Courteau v. St. Paul Fire & Marine Ins. Co.,* 307 Ark. 513, 821 S.W.2d 45 (1991). In preparing for the possibility of future litigation against either the doctors or the Center, it was imperative that Malcom obtain information from both treating physicians about the incident, as both physicians actively participated in the treatment provided to Mrs. Bulsara on the night in question. And, as recognized in *Baylaender,* in exercising their right to seek counsel the doctors "would be mandated by [their] fiducial duties to [their] patient to strictly enjoin [their] attorney and his carrier from any cross-communication or information sharing with anyone else pursuant to the control which [they] may assert under the attorney-client privilege." 594 N.E.2d at 1326.

However, the majority concludes that when the lawsuit was filed and the possibility of litigation became a reality, because only Dr. Watkins, and later the Center, were named defendants, Malcom was automatically disqualified from any further representation of Dr. Watkins or the Center, and they were required to start trial preparations anew with different counsel. I fail to see how such an inefficient result is warranted in this case.

First, it should be noted that there could be no violation of Ark. R. Civ. P. 35(c)(2) or Ark. R. Evid. 503(d)(3)(B) at the time the doctors contacted Malcom to represent them and the Center, because at that time no lawsuit had been filed, thus neither physician could be classified as "party" or "nonparty." Likewise, there is no authority suggested by the majority that would retroactively convert Malcom's communications with his clients to violations of these rules upon the filing of a lawsuit. Thus, the only way these rules could be violated would be through communications that occurred between Dr. Seguin and Malcom after the filing of the lawsuit.

However, appellant has failed to cite with specificity any communications between Dr. Seguin and Malcom, either before or after the lawsuit was filed, that imparted confidential information not otherwise known to Malcom through his representation of Dr. Watkins and the Center and thus violated appellant's physician-patient privilege. Instead, appellant makes the conclusory assertion that Malcom enjoyed "improper access to confidential information," "poisoned the well" with respect to Dr. Seguin, and restricted appellant's access to Dr. Seguin. A review of the record reveals, however, that appellant had the opportunity to depose Dr. Seguin on at least three separate occasions; that Dr. Seguin was subpoenaed by appellant to testify at the tri-

al; and that appellant's counsel referred to Dr. Seguin's expected testimony during her opening statement to the jury. The question of why Dr. Seguin was ultimately not called to testify by appellant is left unanswered, but clearly appellant was not restricted in his access to Dr. Seguin.

Second, even assuming that confidential information was improperly communicated to Malcom by Dr. Seguin in violation of appellant's physician-patient privilege, the sanction mandated by *Baylaender* is the barring of Dr. Seguin as a witness for the defense, which has limited applicability in this case because Dr. Seguin was never called as a witness for the defense. In contrast, the result mandated by the majority, namely the disqualification of Malcom as Dr. Watkins's attorney, is not supported by *Baylaender*. The disqualification of an attorney is a drastic measure to be imposed only where clearly required by the circumstances to protect and preserve the integrity of the attorney-client relationship. *Whitmer v. Sullivent*, 373 Ark. 327, 284 S.W.3d 6 (2008). The majority's position, that Malcom should have disqualified himself to maintain the physician-patient privilege between appellant and Dr. Seguin, is simply unsupported by the case law, and furthermore, as explained above, appellant has failed to demonstrate how this privilege was violated in the instant case. Finally, I also note the important factual distinctions between *Baylaender* and the present case: *Baylaender* presented a situation in which the defendant-physician and the nonparty treating physician did not jointly retain counsel or both participate in the care at issue. Conversely, in the present case, Dr. Watkins and Dr. Seguin were doctors who jointly participated in the care at issue, who had a common interest as partners and employees of Arkansas Women's Center, and who jointly retained their attorney prior to any lawsuit being filed.

It is well settled that a motion for new trial is addressed to the sound discretion of the circuit court, and the circuit court's refusal to grant it will not be reversed on appeal unless an abuse of discretion is shown. *See Jones v. Double "D" Props., Inc.*, 352 Ark. 39, 98 S.W.3d 405 (2003). The party moving for a new trial must show that his or her rights have been materially affected by demonstrating a reasonable possibility of prejudice. *Winkler v. Bethell*, 362 Ark. 614, 210 S.W.3d 117 (2005). This court does not presume that prejudice has resulted from a trial court's error, and we will not reverse for error unless prejudice is demonstrated. *Caplener v. Bluebonnet Mill. Co.*, 322 Ark. 751, 911 S.W.2d 586 (1995). Keeping this standard of review in mind, I would hold that appellant has failed to show that his rights were materially affected by a reasonable possibility of prejudice and would, therefore, find no abuse of discretion in the circuit court's denial of a new trial.

HANNAH, C.J., and BAKER, J., join.